This appeal comes from a summary judgment for the defendant, Decatur Cylinder, Inc., on three counts of a complaint filed by Defco, Inc. Count 1 sought damages, alleging tortious interference with contractual relations, breach of a contract whereby Decatur Cylinder agreed not to hire Defco's employees without Defco's consent, and "intentional and malicious" breach of that contract. Count 3 alleged an amount due on an account stated, and Count 4 alleged the same amount as being due on open account. Counts 3 and 4 were added by amendments 8 years after the cause of action arose, and, as ultimately amended, they alleged that Decatur Cylinder had promised to pay the amounts sought with no intention to perform the promises and that Defco, relying on those promises, had refrained from pursuing collection efforts. The principal issues before us are whether the contract alleged in Count 1 was void as a restraint of trade under Ala. Code 1975, § 8-1-1, whether an action will lie for intentional interference with contract or business relations under *Page 1330 
the facts alleged, and whether Counts 3 and 4 were barred by the statute of limitations.
Defco and Decatur Cylinder are cylinder-manufacturing corporations located on adjacent parcels of land in Decatur, Alabama. In August 1981 they entered into a contract pursuant to which Defco sold certain assets, including the inventory, operations, and good will of its Air-Dro division or subsidiary, to Decatur Cylinder. The agreement was structured partially as a sale and partially as a lease/purchase, with Decatur Cylinder obligating itself under several notes with annual payments and under a lease with quarterly payments for eight years and an option to purchase at the end of that time. Section 10 of the contract read: "Transfers of employees between the parties and/or employment of former employees of one party by the other party shall be by mutual agreement of the parties."
By December 1981, Decatur Cylinder had hired at least two of Defco's employees. Defco filed the original complaint in this action on January 6, 1982, naming two of the Defco employees whom Decatur Cylinder had hired and alleging that they were "highly skilled machinists who may not be replaced by the Plaintiff without causing immediate and irreparable injury to the business of the Plaintiff." The complaint sought a preliminary injunction against, or damages in the amount of $25,000 for, such hirings in breach of Section 10 of the contract. The parties quickly reached a settlement on the injunctive aspect of the case, filing an agreement on January 8 whereby Decatur Cylinder agreed not to hire any of Defco's employees as of that date, and Defco withdrew its application for a preliminary injunction.
Decatur Cylinder filed a motion to dismiss on February 5 and an answer on March 12, but no further proceedings occurred until the case was dismissed for lack of prosecution in December 1984. On January 3, 1985, Defco filed a motion to set aside the order of dismissal, and the court granted the motion on January 4. On August 5, 1988, Defco filed its first amended complaint, adding Count 2, which alleged that Decatur Cylinder had breached the August 1981 contract by failing to pay amounts due thereunder. On October 16, 1989, Defco filed its second amended complaint, adding Counts 3 and 4, which summarily claimed amounts due on account, and Count 5, which alleged breach of the lease by failure to make payments due thereunder.
On March 22, 1990, Defco filed its third amended complaint, "restating the count in the original complaint" by amending Count 1 to seek $1,500,000 damages for breach of Section 10 of the contract, for "intentionally and maliciously violat[ing] said agreement for the purpose of injuring the plaintiff and its business and for the purpose of taking business and production capability away from the plaintiff," and for intentionally interfering with the contractual and business relations between Defco and the two employees named in the original complaint. On May 7, 1990, Defco filed another amendment, amending Counts 3 and 4 to allege that Decatur Cylinder had induced it not to file this action by promising to pay the amount due on account. On June 1, 1990, Defco further amended those allegations.
During the period of Defco's amendments, Decatur Cylinder amended its answer several times, the amendments including a defense that Counts 3 and 4 were barred by the statute of limitations. Decatur also filed and amended a motion for summary judgment, supported by affidavits and depositions. The trial court entered a summary judgment for Decatur Cylinder on Counts 1, 3, and 4, and made the judgment as to those counts final pursuant to Rule 54(b), Ala.R.Civ.P.
Alabama Code 1975, § 8-1-1(a), provides:
 "Every contract by which anyone is restrained from exercising a lawful profession, trade or business of any kind otherwise than is provided by this section is to that extent void."
Within certain limitations, paragraph (b) of that section allows the seller of the good will of a business to enter an agreement *Page 1331 
not to compete with the buyer and allows an employee to enter an agreement to refrain from engaging in a similar business and from soliciting old customers of the employer. Paragraph (c) allows partners to enter into similar agreements upon the dissolution of a partnership.
In their arguments regarding the summary judgment on Count 1, the parties concentrate on Dyson Conveyor Maint., Inc. v. Young Vann Supply Co., 529 So.2d 212 (Ala. 1988). In that case, Dyson Conveyer and Young Vann entered into negotiations exploring the possibility that one of them would buy the other's conveyor belt business. Prior to the negotiations, the parties executed a confidentiality agreement that included a "no switching" provision whereby the companies agreed not to hire each other's employees for a specified period. This Court held that provision to be unenforceable because of the operation of § 8-1-1. Defco seeks to distinguish Dyson Conveyor
by pointing to the evidence cited in that opinion that the only other employer engaged in similar work in Alabama was in Mobile and did not have any job openings. See 529 So.2d at 214. Defco argues that in this case there is no similar evidence, i.e., no evidence that its employees could not engage in their trade if they could not work either for it or for Decatur Cylinder.
Defco's argument overlooks the paragraph following the one it cites. That paragraph distinguishes cases allowing partial restraints of trade, as follows:
 "This statement [that partial restraints of trade may be allowed] has always come in the context where the one who is restrained from engaging in some aspect of a trade or business has entered into a contract, for a consideration, with the party seeking to enforce the contract. We do not see how the principle that allows 'partial restraints' can apply to restrain employees from competing with their former employers without the employees' having entered into such an agreement."
Dyson Conveyor, 529 So.2d at 214-15. The opinion continues by saying that an agreement such as that between Dyson Conveyor and Young Vann could have a field of operation to the extent that the employers had noncompetition agreements with their employees that were enforceable under § 8-1-1(b). Id., at 215.
Section 10 of the contract at issue here purported to at least partially restrain Defco's employees from engaging in their trade, and there is no evidence that those employees had entered into noncompetition agreements with Defco. Section8-1-1 makes such agreements void unless they are shown to fit within one of the statutory exceptions. Under the circumstances, the trial court did not err in entering the summary judgment for Decatur Cylinder on the contract aspect of Count 1. Because Section 10 was properly held void, the summary judgment was also proper as to the portion of Count 1 alleging that Decatur Cylinder "willfully and maliciously" violated Section 10.
Defco argues that its claim alleging intentional interference with contractual or business relations is not barred by the holding in Dyson Conveyor, because that opinion specifically noted that an action based on a claim of intentional interference with employment relations is allowable in Alabama, but that no such action had been filed in that case. However, the only case cited in Dyson Conveyor in which the defendant had hired the plaintiff's employee was James S. Kemper Co.Southeast v. Cox Associates, Inc., 434 So.2d 1380 (Ala. 1983). As the Court noted in Dyson Conveyor, "Kemper allowed a claim where Cox lured a Kemper employee away, knowing of theemployee's covenant not to compete with Kemper."529 So.2d at 216 (emphasis added).
We have reviewed the cases on intentional interference with contractual or business relations, and no other Alabama case has been cited or been disclosed in our research in which it has been found actionable for the defendant to hire the plaintiff's employee, and certainly no such case in which the employee did not have an agreement not to compete with the plaintiff. It is true that an employer-employee contract is perhaps the only type of contract as to which this Court has always said an action will lie for *Page 1332 
intentional interference with the contract. See Gross v. LowderRealty Better Homes Gardens, 494 So.2d 590 (Ala. 1986). However, in the case cited as the source of that rule,Tennessee Coal, Iron Ry. Co. v. Kelly, 163 Ala. 348,50 So. 1008 (1909), the defendant had induced the plaintiff's employer to fire him because he was a union laborer. Cf. Empiregas, Inc.of Ardmore v. Hardy, 487 So.2d 244 (Ala. 1985), in which this Court affirmed a judgment on a verdict awarding damages against Empiregas for using its noncompetition agreements with its former employees to prevent their being hired by Empiregas's competitors. The Court noted that "the jury, having found that the plaintiffs' contracts [not to compete with] Empiregas were fraudulently induced, invalidated Empiregas's justification" for interfering with the plaintiffs' employment opportunities.487 So.2d at 251.
The parties discuss Gross v. Lowder Realty, supra, in regard to whether its restatement of the cause of action of intentional interference with contract or business relations applies to these facts, which occurred more than four years before the decision in Gross. We see no need to address that question in these circumstances. Without a showing that the employee had an enforceable noncompetition agreement with the plaintiff or that the defendant did more than simply hire its competitor's employee, we see no basis for allowing an action for intentional interference in circumstances such as those presented in this case. See Annot., "Liability for Inducing Employee Not Engaged for Definite Term to Move to Competitor," 24 A.L.R.3d 821 (1969). There is no showing that the employees named in Defco's complaint were anything other than employees at will. The trial court did not err in entering the summary judgment for Decatur Cylinder on Count 1 in regard to the intentional interference claim.
Counts 3 and 4 did not specify the items covered in the alleged open account or account stated, but the evidence developed during discovery shows that the claim was for goods Defco allegedly sold to Decatur Cylinder separate and apart from the contract to sell certain of Defco's assets, and for use by Decatur Cylinder of Defco's telephone lines in 1981. When Defco first made a claim for these amounts on December 11, 1981, Decatur Cylinder responded by saying that it had an offsetting and higher claim for amounts due pursuant to the contract because of "undisclosed liabilities, warranty repair work and other charges," including problems with some of Air-Dro's accounts receivable.
When Defco filed its complaint on January 6, 1982, it did not include a claim for the alleged amount due on account. In 1984 and 1986, Defco and Decatur Cylinder negotiated modifications of the lease payments due under the 1981 contract. No mention was made in those modifications of the alleged amount due on account.
The statutory period of limitations for an account stated is six years, Ala. Code 1975, § 6-2-34(5), and, for an open account, three years, § 6-2-37(1).
In response to Decatur Cylinder's defense of the statute of limitations, Defco argues that Decatur Cylinder's officers promised on several occasions to pay the amount due on account. Responding to that argument, Decatur Cylinder cites Ala. Code 1975, § 6-2-16, and argues that an oral promise to pay a debt will not toll the statute of limitations on the debt. Section6-2-16 reads:
 "No act, promise or acknowledgment is sufficient to remove the bar to an action created by the provisions of this chapter, nor is such evidence of a new and continuing contract, except a partial payment, made upon the contract by the party sought to be charged before the bar is complete or an unconditional promise in writing signed by the party to be charged thereby."
Defco argues that this section applies only to situations in which the bar is complete before the alleged promise is made. As Decatur Cylinder points out, however, this Court has expressly rejected such a construction:
 "It is true that, from the wording of the first part of the section, it might be liable to the construction that it was referring only to removing a bar which had already taken place; but the other wording *Page 1333 
shows that it is referring to acts both during the running of the statute and after the bar has been completed."
Jasper Trust Co. v. Lamkin, 162 Ala. 388, 394-95, 50 So. 337,339 (1909); see also Harrison v. Mason, 238 Ala. 497,191 So. 916 (1939); Whitfield v. Hatch, 235 Ala. 38, 177 So. 149
(1937); and White v. Sikes, Kelly, Edwards Bryant,410 So.2d 66 (Ala.Civ.App. 1982). Because Decatur Cylinder never made a partial payment on, or a written promise to pay, the alleged account, § 6-2-16 prevents Defco from avoiding the statute of limitations.
Defco also argues that Counts 3 and 4 are saved from the operation of the statute of limitations because, it argues, they relate back to the filing of the original complaint, pursuant to Rule 15(c), Ala. R.Civ.P., which reads, in pertinent part:
 "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."
Counts 3 and 4 do not arise out of the conduct, transaction, or occurrence set forth in the original complaint, which raised only the alleged hiring of Defco employees in violation of Section 10 of the contract. The claims based on an account stated or on an open account involve entirely different facts and causes of action. See McCollough v. Warfield, 523 So.2d 374
(Ala. 1988); Whitfield v. Murphy, 475 So.2d 480 (Ala. 1985);Cooper v. Thomas, 456 So.2d 280 (Ala. 1984); and McClendon v.City of Boaz, 395 So.2d 21 (Ala. 1981). Therefore, the doctrine of relation back does not save Counts 3 and 4 from the bar of the statute of limitations.
For the foregoing reasons, the judgment is affirmed.
AFFIRMED.
HORNSBY, C.J., and ADAMS, STEAGALL and INGRAM, JJ., concur.