Southeast Cancer Network, P.C. ("Southeast"), sued DCH Healthcare Authority, Inc. ("DCH"), and Oncology Associates of West Alabama, P.C., and its members[1] (Oncology Associates and its members are hereinafter referred to collectively "Oncology Associates"), alleging claims of tortious interference with a business relationship and of engaging in an unlawful trust, combine, or monopoly in violation of § 6-5-60, Ala. Code 1975, and seeking a judgment declaring DCH's exclusive contract with Oncology Associates void under § 8-1-1, Ala. Code 1975.[2] The trial court entered a summary judgment in favor of DCH and Oncology Associates. Southeast appeals only from the portion of the summary judgment declaring DCH's exclusive contract with Oncology Associates valid. Because the trial court found that no facts were in dispute and because Southeast fails to demonstrate that the trial court erred in its application of law to those facts, we affirm the trial court's summary judgment against Southeast.
 Facts and Procedural History
In 1982, DCH was incorporated as a public hospital corporation pursuant to authorizing resolutions adopted by Tuscaloosa County, the City of Tuscaloosa, and the City of Northport.[3] DCH's certificate of incorporation provides that DCH shall have all the powers and authority permitted to it under the Health Care Authorities Act of 1982. § 22-21-310
et seq., Ala. Code 1975. DCH owns and operates DCH Regional Medical Center in Tuscaloosa and Northport Medical Center in Northport. DCH leases and operates Fayette Medical Center in Fayette.
Oncology Associates of West Alabama, P.C., is a medical professional corporation located in Tuscaloosa. All physicians employed by Oncology Associates of West Alabama hold privileges to practice oncology at DCH facilities.
Southeast employs 11 physicians. Southeast's physicians have offices in Tuscaloosa, Fort Payne, Decatur, Sylacauga, and Montgomery, Alabama, and in Lebanon, Tennessee. Southeast's physicians hold staff privileges at over 30 hospitals in Alabama and Tennessee. Southeast operates an oncology clinic in Tuscaloosa. Some physicians employed by Southeast may have practiced oncology at DCH-operated facilities before November 1997.[4] *Page 455 
DCH has no objection to granting general staff privileges at any of its hospitals to Southeast's physicians. In fact, one Southeast physician, Dr. Pamela Hughes, holds staff privileges to practice internal medicine at all three DCH hospitals. DCH, however, declines to grant Southeast's physicians specialist-staff privileges to practice oncology at a DCH hospital.
DCH and Oncology Associates maintain that there are in the "surrounding area" at least 10 medical centers, in addition to the hospitals operated by DCH and the 31 hospitals at which Southeast's physicians hold staff privileges, that provide oncological services.[5] At least 5 of those medical centers are within 60 miles of Tuscaloosa.
On November 18, 1997, DCH entered into a five-year contract with Oncology Associates to provide oncology services at medical centers operated by DCH.[6] The agreement contains the following exclusivity provision:
 "This agreement is exclusive for the provision of inpatient and outpatient oncology services and [DCH] agrees that during the terms of this Agreement it will not allow or permit any person or entity other than Oncology Associates to provide inpatient or outpatient oncology services (either directly or indirectly) in the Center or the Cancer Program (including physician oncology services at all [DCH] owned operated hospitals or health care facilities) without the written consent of Oncology Associates, which consent Oncology Associates may unreasonably withhold."
On October 4, 2000, Southeast sued DCH, Oncology Associates, and the individual defendants, alleging that the defendants had violated Alabama's antitrust laws by engaging in an unlawful trust, combine, or monopoly and had tortiously interfered with Southeast's business relationships, and seeking a declaration that the exclusive agreement between DCH and Oncology Associates was void because it violated §8-1-1, Ala. Code 1975. The gravamen of Southeast's complaint was that the exclusive contract DCH maintains with Oncology Associates precludes Southeast's physicians from practicing inpatient oncology at facilities operated by DCH.
DCH and Oncology Associates moved for a summary judgment. On August 19, 2002, the trial court entered a summary judgment in favor of DCH and Oncology Associates as to all claims. The trial court found there were no material facts in dispute and that § 22-21-318(a)(31) and (32), Ala. Code 1975,[7] permit DCH to engage in anticompetitive behavior. The trial court found that DCH had not tortiously interfered with any of Southeast's business relationships because DCH has a legal right *Page 456 
to enter into exclusive contracts. Finally, the trial court found that Oncology Associates was entitled to a summary judgment because DCH's immunity from antitrust liability extends to private parties with whom DCH enters into contracts. Southeast now appeals the trial court's refusal to declare DCH's contract with Oncology Associates void under §8-1-1, Ala. Code 1975.
 Issue on Appeal
The sole issue presented on appeal is whether the trial court erred in finding that DCH's contract with Oncology Associates is not void under § 8-1-1, Ala. Code 1975.
 Analysis "The standard of review applicable to a summary judgment is the same as the standard for granting the motion, that is, we must determine whether there was a genuine issue of material fact and, if not, whether the movant was entitled to a judgment as a matter of law. Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and resolve all reasonable doubts against the movant. Wilson v. Brown, 496 So.2d 756, 758 (Ala. 1986); Harrell v. Reynolds Metals Co., 495 So.2d 1381 (Ala. 1986). See also Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala. 1990)."
Brewer v. Woodall, 608 So.2d 370, 372 (Ala. 1992) (cited with approval inStiff v. Alabama Alcoholic Beverage Control Bd., [Ms. 1010169, May 2, 2003] ___ So.2d ___, ___ (Ala. 2003)).
Southeast does not argue that any facts are in dispute. Instead, Southeast argues that the trial court erred in its application of the law and that the contract between DCH and Oncology Associates should be declared void under § 8-1-1, Ala. Code 1975, because that contract prohibits Southeast's oncologists from practicing oncology at DCH facilities. Southeast argues that DCH has a monopoly in western Alabama,[8] and that DCH's contract with Oncology Associates denies patients the right to choose their own physician for in-patient oncology care because this monopoly prevents Southeast physicians from practicing in-patient oncology in western Alabama.
Section 22-21-318(a)(31), Ala. Code 1975, provides health-care authorities with immunity from antitrust laws, but Southeast argues that that Code section does not provide DCH and Oncology Associates immunity in this case because § 8-1-1, Ala. Code 1975, is not an antitrust law. Southeast also argues that the contract between DCH and Oncology Associates is void because DCH and Oncology Associates disagree about the scope of the exclusivity provision. According to Southeast, Oncology Associates believes the agreement covers only the practice of oncology, but Southeast asserts that DCH has used the exclusivity provision in its contract with Oncology Associates to deny one of Southeast's physicians, Dr. Pamela Hughes, the privilege of practicing hematology at a facility operated by DCH.
DCH and Oncology Associates argue that § 8-1-1, Ala. Code 1975, as a matter of law, does not apply in this case because Oncology Associates' exclusive agreement to provide oncology services for DCH does not restrain physicians who work for Southeast from working as oncologists. DCH and Oncology Associates also argue that Southeast lacks standing to bring a claim under § 8-1-1, Ala. Code 1975, *Page 457 
because it is a corporation, not a physician seeking staff privileges at a DCH facility.[9] Finally, DCH and Oncology Associates argue that §22-21-318, Ala. Code 1975, permits DCH to enter into exclusive contracts with physicians to provide services.
DCH and Oncology Associates argue correctly that their agreement, as a matter of law, does not restrain Southeast's physicians from practicing oncology. DCH and Oncology Associates' agreement does not on its face prohibit Southeast's physicians — who are not parties to the agreement — from practicing oncology. The agreement merely denies Southeast's employees staff privileges in oncology at medical facilities operated by DCH. Southeast's physicians practice oncology in at least 30 other hospitals or health-care facilities in Alabama and Tennessee.
"[T]his Court has long held that not every contract which imposes a restraint on trade or competition is void." Tomlinson v. Humana, Inc.,495 So.2d 630, 631-32 (Ala. 1986). The fact that a contract "`may affect a few or several individuals engaged in a like business does not render it void [under § 8-1-1, Ala. Code 1975].'" Reed v. Herren, 423 So.2d 139, *Page 458 
142 (Ala. 1982) (quoting Terre Haute Brewing Co. v. McGeever, 198 Ala. 474,480, 73 So. 889, 891 (1916)). Every contract "`to some extent injures other parties; that is, it necessarily prevents others from making the sale or sales consummated by such contract.'" Reed, 423 So.2d at 142 (quoting Terre Haute Brewing Co. v. McGeever, 198 Ala. 474, 480,73 So. 889, 891 (1916)).
This Court's holding in Tomlinson supports the conclusion that the fact that Southeast's physicians are denied staff privileges at DCH facilities does not restrain them from practicing their profession in violation of § 8-1-1, Ala. Code 1975. In Tomlinson, Shoals Medical Laboratory had an exclusive agreement to provide pathology services to Humana Hospital Russelville, Humana Hospital Florence, and Humana Hospital Shoals. Between 1981 and 1984, Tomlinson was employed by Shoals Medical Laboratory and during that time Tomlinson enjoyed staff privileges at the Humana hospitals. In 1984, Shoals terminated Tomlinson. Tomlinson attempted to continue to practice pathology at the three Humana hospitals. Humana denied Tomlinson staff privileges, citing its exclusive contract with Shoals as the reason for denying Tomlinson staff privileges. Humana permitted Tomlinson to provide secondary pathology consultations when a patient or physician specifically requested that he do so. Tomlinson sued Humana under § 8-1-1, Ala. Code 1975, arguing that Humana's contract with Shoals restricted his ability to practice his profession.
This Court held in Tomlinson that the hospital's exclusive pathology contract with Shoals "affected only a partial restraint" and was "properly restricted." 495 So.2d at 632. This Court also held that "[t]he contract in question has no effect on Tomlinson's ability to practice pathology at any of the other area hospitals, nor [does Humana] completely prohibit him from practicing at the Humana hospitals." 495 So.2d at 632.
In the present case, DCH's contract with Oncology Associates does not prevent Southeast's physicians from practicing at other hospitals or at Southeast's own outpatient clinic in Tuscaloosa, or from acquiring staff privileges at DCH facilities in areas other than oncology. The record indicates that one Southeast physician has staff privileges in internal medicine at all three of DCH's hospitals. Therefore, as a matter of law, DCH's contract with Oncology Associates is not void because it does not restrain Southeast, or Southeast's employees, in a manner that violates § 8-1-1, Ala. Code 1975. Neither DCH nor Oncology Associates has prevented Southeast or any of its employees from practicing oncology.
Southeast also argues that the trial court erred when it concluded that § 22-21-318(a)(31), Ala. Code 1975, permits DCH and Oncology Associates to restrain trade in violation of § 8-1-1, Ala. Code 1975. Because "[w]e can affirm the trial court `on any ground developed in, and supported by, the record,'" Lyons v. River Road Constr., Inc., [Ms. 1012092, March 14, 2003] 858 So.2d 257, 265 (Ala. 2003) (quoting Ex parte Ramsay,829 So.2d 146, 155 (Ala. 2002)), and because DCH and Oncology Associates' contract is not void under § 8-1-1, Ala. Code 1975, we need not reach the question whether § 22-21-318(a)(31), Ala. Code 1975, permits a health-care authority to enter into and enforce a contract otherwise made void by § 8-1-1, Ala. Code 1975.
Finally, Southeast argues that the contract between DCH and Oncology Associates is void because DCH and Oncology Associates disagree about the scope of the exclusivity provision. Southeast argues that Oncology Associates believes the *Page 459 
agreement covers only the practice of oncology, but Southeast asserts that DCH has used the exclusivity provision in its contract with Oncology Associates to deny one of Southeast's physicians, Dr. Pamela Hughes, the privilege of practicing hematology at a DCH facility.
Dr. Hughes has not, in an individual capacity, sued DCH or Oncology Associates alleging that either has prevented her from practicing hematology. Section 22-21-318(a)(12) and (32), Ala. Code 1975, authorize DCH to select, appoint, and define the privileges for its medical staff. DCH may grant or withhold whatever privilege it chooses from Dr. Hughes. Any claim that DCH restrained Dr. Hughes from practicing hematology would have to be framed under § 8-1-1, Ala. Code 1975, or as a breach-of-contract claim grounded on whatever agreement concerning staff privileges Hughes may have with DCH. By the same rationale that DCH may enter into an exclusive agreement concerning oncology services with Oncology Associates and not run afoul of § 8-1-1, Ala. Code 1975, DCH could choose not to deal with Dr. Hughes or to extend privileges of any sort to Dr. Hughes. Therefore, even assuming the facts alleged by Southeast concerning Dr. Hughes are correct, Dr. Hughes would not be restrained from practicing hematology and would not be restrained from acquiring staff privileges at any of the other numerous hospitals in the area. Southeast has simply not made the case that DCH and Oncology Associates restrain any physician from practicing medicine by denying him or her oncology staff privileges, or any other kind of staff privileges at DCH hospitals.
 Conclusion
Because Southeast has failed to demonstrate that the trial court erred in entering a summary judgment in favor of DCH and Oncology Associates, we affirm the trial court's summary judgment in favor of DCH and Oncology Associates.
AFFIRMED.
MOORE, C.J., and BROWN, HARWOOD, and STUART, JJ., concur.
[1] The members and individual defendants are David L. Hinton, Wade A. Young, Mary J. Misichia, Melanie D. Graham, and J. Curtis Tucker.
[2] Section 8-1-1(a), Ala. Code 1975, provides: "Every contract by which anyone is restrained from exercising a lawful profession, trade, or business of any kind otherwise than is provided by this section is to that extent void."
[3] DCH was originally incorporated as "Druid City Health Care Authority." A 1984 amendment to its certificate of incorporation changed its name to DCH Healthcare Authority, Inc.
[4] Southeast stated in the "Statement of Facts" in its opposition to a summary judgment that "Prior to November 1998, [Southeast's] doctors were able to practice in-patient oncology at DCH, as no exclusive contract existed with regards to the providing of in-patient oncological services." DCH and Oncology Associates, however, entered into their agreement in November 1997. We believe that Southeast misstated the date in its "Statement of Facts."
[5] DCH and Oncology Associates argue that hospitals in Mississippi and in Birmingham provide cancer patients with alternatives to the hospitals in Tuscaloosa.
[6] DCH has the authority to enter into such an agreement pursuant to § 22-21-318(a)(12), Ala. Code 1975.
[7] Section 22-21-318(a)(31), Ala. Code 1975, gives a health-care authority the following power:
 "To exercise all powers granted hereunder in such manner as it may determine to be consistent with the purposes of this article, notwithstanding that as a consequence of such exercise of such powers it engages in activities that may be deemed `anticompetitive' within the contemplation of the antitrust laws of the state or of the United States . . . ."
[8] Southeast argues that DCH has a monopoly in western Alabama because DCH operates the only two hospitals in Tuscaloosa County and the Fayette Medical Center in Fayette.
[9] In its brief, Oncology Associates cites Todorov v. DCH HealthcareAuthority, 921 F.2d 1438, 1441 n. 1 (11th Cir. 1991), in support of the proposition that Southeast lacks standing to bring this action under §8-1-1, Ala. Code 1975. In Todorov, the United States Court of Appeals for the Eleventh Circuit found:
 "Dr. Todorov has his office at The Neurology Clinic, P.C., a corporation of which he is the sole shareholder. He brought this [antitrust] suit in behalf of himself and the corporation. Though the district court did not reach the issue, we conclude that the corporation has no standing to sue in this matter. It is Dr. Todorov, not his corporation, who is seeking [and was denied] privileges at DCH and, thus, the relief prayed for in this case."
Analogously in this case, the physicians employed by Southeast seek staff privileges at DCH facilities so that they may practice their profession. Southeast, as a corporate person, may not receive staff privileges or practice medicine; therefore, under the reasoning of the Eleventh Circuit Court of Appeals in Todorov, Southeast would lack standing to bring this action.
This Court, however, has not directly addressed the question of nonparty standing under § 8-1-1(a), Ala. Code 1975. In his special concurrence in Tomlinson v. Humana, Inc., 495 So.2d 630, 632-33 (Ala. 1986) (Torbert, C.J., concurring specially), then Chief Justice Torbert considered whether a "non-party to a `restrictive contract' . . . can state a claim under [§ 8-1-1(a), Ala. Code 1975]." In Tomlinson, Shoals Medical Laboratory had an exclusive agreement to provide pathology services to hospitals owned by Humana. For three years Tomlinson was an employee of Shoals. Shoals terminated Tomlinson, and Tomlinson then sought to continue to practice pathology at the Humana hospitals. Humana declined Tomlinson staff privileges, citing its exclusive contract with Shoals. Tomlinson brought an action against Humana under § 8-1-1, Ala. Code 1975, arguing that Humana's contract with Shoals restricted his ability to practice his profession. The Court chose not to decideTomlinson on the question of standing.
In this case, Southeast stands one step further removed from the transaction between the hospital and its exclusive contractor than did Tomlinson. In Tomlinson, Tomlinson himself sought employment as a pathologist. In this case, Southeast does not itself seek employment or staff privileges with DCH. Southeast is merely the corporation that employs the physicians who seek staff privileges at DCH facilities.
While this case would appear to give the Court an opportunity to discuss standing under § 8-1-1(a), Ala. Code 1975, we do not believe that we need to make a definitive statement about who would have standing to bring a claim under § 8-1-1(a), Ala. Code 1975, in order to decide this case. Moreover, even were this Court to decide that Southeast as a corporation lacked standing to bring a claim under § 8-1-1(a), Ala. Code 1975, any holding as to whether the individual physicians employed by Southeast would have standing to bring a claim under § 8-1-1, Ala. Code 1975, would be dicta.