CRAWLEY, Presiding Judge.
Crown Castle USA, Inc. (“Crown”), leases space on cellular-telephone towers to cellular-telecommunications providers. In conducting its business, Crown uses the services of several types of professionals, including land surveyors and civil or structural engineers. In the years before approximately mid- to late 2002, Crown contracted with local vendors for the surveying and engineering services it required. Howell Engineering and Surveying, Inc. (“HES”), was one of Crown’s approved vendors. Before November 2001, HES and Crown operated under a professional-services agreement (“the former agreement”). In November 2001, HES and Crown entered into a new agreement, entitled the “A & E Agreement,” to govern their business relationship, which was explicitly defined in the A & E Agreement as an independent-contractor relationship. The A & E Agreement included provisions governing such things as the procedures for invoicing, the requirement that the contractor have certain insurance, the grounds for termination of the agreement, and confidentiality. The A & E Agreement also specifically stated that the agreement was not exclusive and that Crown could award projects to other contractors. In addition, the A & E Agreement contained the following provision in Paragraph 15E, which we will refer to as the “no-solicitation/no-hire provision”:
“Contractor and Crown mutually agree not to solicit nor hire individuals actively employed by the other party’s respective organization during and for a period of one (1) year following termination of this Agreement, without the prior written consent of the other party, which consent will not be unreasonably withheld.”
In October 2001, before the execution of the A & E Agreement between Crown and HES, Gloria Brown, HES’s only civil structural engineer, sought to become an approved vendor for Crown. Brown had decided to start her own business; however, she continued to work for HES. In February 2002, Brown began working on projects assigned to her by Crown. The employee handbook provided to Brown and other employees by HES contained the following provision:
“MOONLIGHTING
“Moonlighting is strongly discouraged and must be approved in advance by the President. No moonlighting will be permitted if it is a conflict of interest with our company. Failure to have other employment authorized in advance is grounds for immediate dismissal.”
Sometime around March 15, 2002, Larry Howell, the president of HES, learned that Brown was doing projects for Crown independently. Immediately after he discovered that Brown was working for Crown, Larry Howell terminated Brown’s employ *404 ment with HES. He testified that he had “laid [Brown] off’ and that he had explained to her that the business from Crown was slowing down and that he could not afford to continue employing her.
HES sued Crown, alleging that Crown had breached the A & E Agreement and the former agreement between the parties and that Crown had intentionally interfered with HES’s business relations. HES also sued Brown, alleging that Brown had intentionally interfered with HES’s business relations and that Brown had converted certain items of property owned by HES. The intentional-interference-with-business-relations claims against both Brown and Crown were disposed of by the entry of summary judgments in favor of Brown and Crown. The remaining claims proceeded to a jury trial, at which the breach-of-contract claim based on the former agreement between Crown and HES was voluntarily withdrawn by HES. After Crown’s and Brown’s respective preverdict motions for a judgment as a matter of law (“JML”) at the close of HES’s evidence and at the close of all the evidence were denied by the trial court, the remaining breach-of-contract claim based on Crown’s alleged breach of the A & E Agreement and the conversion claim against Brown were submitted to the jury. The jury returned a verdict in favor of HES and against both Brown and Crown, awarding HES $618,634 in damages on its breach-of-contract claim against Crown and $7,300 in compensatory damages and $73,000 in punitive damages on its conversion claim against Brown. Crown and Brown each filed postjudgment motions; Crown’s post-judgment motion was denied, but the trial court granted Brown’s postjudgment motion in part, remitting the punitive-damages award to $50,000. Both Crown and Brown appealed to the Alabama Supreme Court. Brown’s appeal was later dismissed by agreement of the parties.
Later, HES filed a garnishment action against Crown and Brown to recover from Crown a portion of the $57,300 judgment against Brown. The trial court determined that Crown owed Brown $24,600, which amount was subject to garnishment by HES. Crown appealed that judgment to this court (case no. 2031147).[1] Crown’s appeal of the judgment entered on the jury’s verdict was then transferred to this court, pursuant to Ala.Code 1975, § 12-2-7(6), assigned case no. 2040076, and the two appeals were consolidated.

The Appeal of the Judgment on the Breach-of-Contract Claim in Case No. 20f0076

Crown argues that the trial court erred in failing to grant its motions for a JML.
“This Court reviews a denial of a motion for a JML by the same standard the trial court used in initially denying the motion. Palm Harbor Homes, Inc. v. Crawford, 689 So.2d 3 (Ala.1997). Furthermore, we must determine ‘whether the party who bears the burden of proof had produced substantial evidence creating a factual dispute requiring resolution by the jury.’ Bell v. T.R. Miller Mill Co., Inc., 768 So.2d 953, 956 (Ala.2000), citing Carter v. Henderson, 598 So.2d 1350 (Ala.1992). We view the evidence in a light most favorable to the nonmov-ing party and entertain any reasonable inferences the jury may have been able to draw. Bell, 768 So.2d at 956. Notwithstanding, we accord the trial court’s ruling on a question of law no presumption of correctness. Id.”
*405 LaFarge Bldg. Materials, Inc. v. Stribling, 880 So.2d 415, 418-19 (Ala.2003).
One of several grounds argued by Crown in its motions for a JML and again on appeal as a basis for reversal is that the no-solieitation/no-hire provision of the A & E Agreement is void as a matter of law. Although the A & E Agreement specified that Pennsylvania law would govern the agreement and although choice-of-law provisions are honored in Alabama, Crown correctly points out that Pennsylvania law governing noncompetition agreements cannot be applied if application of that law would contravene Alabama’s policy regarding noncompetition agreements. Cherry, Bekaert & Holland v. Brown, 582 So.2d 502, 506-07 (Ala.1991). In Brown, our supreme court was faced with determining whether to apply the law of North Carolina, which the parties had chosen to govern their agreement, or the law of Alabama. Brown, 582 So.2d at 507. The noncompetition provisions in the parties’ agreement were enforceable under North Carolina law, but they violated Ala.Code 1975, § 8-1-1. Id. As the Brown court explained:
“The partnership agreement specifies that the parties agree that North Carolina law will govern the construction and validity of the agreement. Alabama follows the principle of ‘lex loci contrac-tus,’ which states that a contract is governed by the laws of the state where it is made except where the parties have legally contracted with reference to the laws of another jurisdiction. Macey v. Crum, 249 Ala. 249, 30 So.2d 666 (1947); J.R. Watkins Co. v. Hill, 214 Ala. 507, 108 So. 244 (1926). Alabama law has long recognized the right of parties to an agreement to choose a particular state’s laws to govern an agreement. Craig v. Bemis Co., 517 F.2d 677 (5th Cir.1975). Thus, North Carolina law would seem to govern the present agreement, because CB & H and Brown have apparently chosen the laws of North Carolina to govern it. However, this principle is qualified by the principles set out in Blalock v. Perfect Subscription Co., 458 F.Supp. 123 (S.D.Ala.1978), and the cases following it.
“In Blalock, although the parties to an agreement, which contained a covenant not to compete, chose Pennsylvania law (which enforces covenants not to compete) to govern the agreement, the United States District Court for the Southern District of Alabama held, that where the parties’ choice of law would be contrary to the fundamental public policies of the forum state, Alabama, the parties’ choice of law could not be given effect and that the laws of the forum must control the agreement. That case involved a contract between an Alabama resident and a Pennsylvania corporation. The Blalock court referred to the Restatement Second of Conflict of Laws, §§ 187 and 188 for guidance. Section 187 provides, in part:
“ ‘(1) The law of the state chosen by the parties to govern their contractual rights and duties will be applied if the particular issue is one which the parties could have resolved by an explicit provision in their agreement directed to that issue.
“ ‘(2) The law of the state chosen by the parties to govern their contractual rights and duties will be applied, even if the particular issue is one which the parties could not have resolved by an explicit provision in their agreement directed to that issue, unless either
“ ‘(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties’ choice, or
*406 “ ‘(b) application of the law of the above chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state in the determination of the particular issue and which, under the rule of § 188, would be the state of the applicable law in the absence of an effective choice of law by the parties.’
“Comment (g) to § 187 states further:
“ ‘Fulfillment of the parties’ expectations is not the only value in contract law; regard must also be had for state interests and for state regulation. The chosen law should not be applied without regard for the interests of the state which would be the state of the applicable law with respect to the particular issue involved in the absence of an effective choice by the parties. The forum will not refrain from applying the chosen law merely because this would lead to a different result than would be obtained under the local law of the state of the otherwise applicable law. Application of the chosen law will be refused only (1) to protect a fundamental policy of the state which, under the rule of § 188, would be the state of the otherwise applicable law, provided (2) that this state has a materially greater interest in the determination of the particular issue.’
“The comments to § 187 also provide that in order for a policy to be considered fundamental it must be ‘a substantial one’ and ‘may be embodied in a statute which makes one or more kinds of contracts illegal or which is designed to protect a person against the oppressive use of superior bargaining power.’ The Blalock court went on to hold that because the covenant not to compete, which would be enforced under Pennsylvania law, ‘flies directly in the face of the public policy of Alabama as set out by statute,’ the parties’ choice of law could not be given effect, and the law of Alabama, namely § 8-1-1, governed the agreement. See also Hughes Associates, Inc. v. Printed Circuit Corp., 631 F.Supp. 851 (N.D.Ala.1986).
“We are faced with a similar situation here. While parties normally are allowed to choose another state’s laws to govern an agreement, where application of that other state’s laws would be contrary to Alabama policy, the parties’ choice of law will not be given effect and Alabama law will govern the agreement. In this case, because the parties have chosen North Carolina law to govern the agreement and North Carolina law would enforce the covenant not to compete set out in paragraphs 15.8 and 15.9, the parties’ choice of law must [fail]. This Court finds that Alabama’s policy against covenants not to compete is a fundamental public policy; that Alabama law would be applicable but for the parties’ choice of North Carolina law; and that Alabama has a materially greater interest than North Carolina in the determination of this issue, because CB & H is attempting to enforce a covenant not to compete in Alabama and against an Alabama resident. Furthermore, application of North Carolina law, enforcing the covenant not to compete, clearly ‘flies directly in the face of the public policy of Alabama.’ Blalock, 458 F.Supp. at 127. Therefore, we hold that the contractual choice of North Carolina law cannot be given effect and that Alabama law will govern this agreement; therefore, § 8-1-1 is to be enforced. Under that provision, paragraph 15.9 is void and unenforceable and Brown cannot be bound by its terms.”
Brown, 582 So.2d at 506-08.
Likewise, in the present case, we are faced with determining whether the *407 no-solicitation/no-hire provision in the A & E Agreement would be unenforceable under Alabama law, thus preventing the application of Pennsylvania law despite the parties’ intent. HES appears to concede that we must first consider whether the no-solicitation/no-hire provision is enforceable under Alabama law; thus, both parties agree that, as explained above, the parties’ choice of law must yield if enforcement of the provision would fly in the face of Alabama’s public policy disfavoring non-competition agreements. Therefore, we will now consider whether the no-solicitation/no-hire provision is void under Alabama law.
Section 8-1-1, which addresses the illegality of noncompetition agreements, reads as follows:
“(a) Every contract by which anyone is restrained from exercising a lawful profession, trade, or business of any kind otherwise than is provided by this section is to that extent void.
“(b) One who sells the good will of a business may agree with the buyer and one who is employed as an agent, servant or employee may agree with his employer to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a specified county, city, or part thereof so long as the buyer, or any person deriving title to the good will from him, or employer carries on a like business therein.
“(c) Upon or in anticipation of a dissolution of the partnership, partners may agree that none of them will carry on a similar business within the same county, city or town, or within a specified part thereof, where the partnership business has been transacted.”
Crown relies on Defco, Inc. v. Decatur Cylinder, Inc., 595 So.2d 1329 (Ala.1992), and Dyson Conveyor Maintenance, Inc. v. Young & Vann Supply Co., 529 So.2d 212 (Ala.1988), in support of its argument that the no-solicitation/no-hire provision violates § 8-1-1 and is therefore void. HES argues that those cases are distinguishable from this case based on its handbook provision prohibiting moonlighting by HES employees.
In Dyson Conveyor, our supreme court was faced with an agreement containing a provision similar to the no-solicitation/no-hire provision in the present case. The parties in Dyson Conveyor, Dyson Convey- or Maintenance, Inc. (“Dyson Conveyor”), and Young & Vann Supply Company (“Young & Vann”) were in negotiations concerning the possibility of “one company’s buying the other’s assets.” Dyson Conveyor, 529 So.2d at 212. During those negotiations, the representatives of both companies entered into an agreement to protect their respective confidential information; this agreement also contained a “no switching” provision, which restrained each company from hiring the other company’s employees for a specified time period. Id. One of Young & Vann’s division managers, James Martin, left Young & Vann and sought employment with Dyson Conveyor within the specified time limit. Id. at 213. Young & Vann sued Dyson Conveyor to enforce the “no switching” provision; the trial court entered judgment in favor of Young & Vann, holding that the “no switching” provision “ ‘d[id] not fall within the proscriptions’ of 8-1-1,” and Dyson Conveyor appealed. Id. at 214. Our supreme court reversed the trial court’s judgment, holding that the “no switching” provision was void under § 8-1-1. Id. at 216.
Our supreme court explained its holding, stating:
“We disagree with the trial court’s conclusion that the agreement is not governed by § 8-1-1 simply because it *408 is not a non-competition agreement between an employer and an employee. On the contrary, the fact that it does not fit within a listed exception to § 8-1-1 tends to indicate that, if it is in restraint of trade, it should be prohibited by that section.
“The agreement, on its face, appears to violate § 8-1-1, because, by it, Young & Vann’s and Dyson Conveyor’s employees are ‘restrained from exercising a lawful profession, trade, or business.’ James Martin introduced an affidavit stating that the only other company in Alabama that conducts a similar business is in Mobile, and he testified that there was no opening at that company for a job similar to his position at Young & Vann. Thus, the agreement, if enforceable, effectively limits the two companies’ employees to their present employment if they are to continue in their trade. This result conflicts with the policy embodied in § 8-1-1 of disfavoring contracts restraining employment. See Chavers v. Copy Products Co., 519 So.2d 942 (Ala.1988); Calhoun v. Brendle, Inc., 502 So.2d 689 (Ala.1986); Greenlee v. Tuscaloosa Office Products & Supply, Inc., 474 So.2d 669 (Ala.1985); DeVoe v. Cheatham, 413 So.2d 1141 (Ala.1982); Cullman Broadcasting Co. v. Bosley, 373 So.2d 830 (Ala.1979); Burkett v. Adams, 361 So.2d 1 (Ala.1978); Robinson v. Computer Servicenters, Inc., 346 So.2d 940 (Ala.1977); White Dairy Co. v. Davidson, 283 Ala. 63, 214 So.2d 416 (1968); Hill v. Rice, 259 Ala. 587, 67 So.2d 789 (1953).
“We recognize that this Court has often said that contracts in partial restraint of trade may be allowed. Tomlinson v. Humana, Inc., 495 So.2d 630 (Ala.1986); Hoppe v. Preferred Risk Mutual Ins. Co., 470 So.2d 1161 (Ala.1985); Famex, Inc. v. Century Ins. Services, Inc., 425 So.2d 1053 (Ala.1982); Hibbett Sporting Goods, Inc. v. Biernbaum, 391 So.2d 1027 (Ala.1980); Terre Haute Brewing Co. v. McGeever, 198 Ala. 474, 73 So. 889 (1916). This statement has always come in the context where the one who is restrained from engaging in some aspect of a trade or business has entered into a contract, for a consideration, with the party seeking to enforce the contract. We do not see how the principle that allows ‘partial restraints’ can apply to restrain employees from competing with their former employers without the employees’ having entered into such an agreement.
“This does not mean that there is no field of operation for agreements such as that involved here. They can be enforceable, however, only to the extent that they supplement employer/employee contracts that are valid under Ala. Code 1975, § 8-1-1. Thus, if Martin had validly agreed with Young & Vann not to compete with that company after he left its employ, and Young & Vann and Dyson Conveyor had appropriately entered into an agreement like the one at issue, then, when Dyson Conveyor hired Martin, Young & Vann could have sued not only Martin for breach of his contract, but also Dyson Conveyor for breach of its contract. In such a case, the no switching agreement would not restrain trade, because the employer/employee agreement, which is valid under § 8-1-1, would have already imposed the restraint. That is, once an employee enters with his employer into a partial restraint of his trade that would be allowed under § 8-1-1 and the cases cited above, a no switching agreement would add no further restraint on that employee, and so would not violate § 8-1-1, at least with respect to him.”
Dyson Conveyor, 529 So.2d at 214-15.
In Defco, two cylinder manufacturing corporations, Defco, Inc., and Decatur Cyl *409 inder, Inc., negotiated the partial sale and partial lease/purchase of a division of Def-co to Decatur Cylinder. Defco, 595 So.2d at 1330. One section of the contract effectuating the transaction provided that “ ‘[transfers of employees between the parties and/or employment of former employees of one party by the other party shall be by mutual agreement of the parties.’ ” Id. Decatur Cylinder then hired two of Defco’s employees. Id. Defco sued, seeking a preliminary injunction and damages for breach of contract. Id. The parties resolved the preliminary-injunction issue, and Decatur Cylinder subsequently filed a motion for a summary judgment on, among other things, the breach-of-contract claim. Id. The trial court entered a summary judgment on, among other things, the breach-of-contract claim, and Defco appealed. Id.
According to the supreme court’s opinion, both Defco and Decatur Cylinder focused their arguments on appeal on the applicability of Dyson Conveyor. Id. at 1331. While Decatur Cylinder relied on Dyson Conveyor to argue in favor of an affirmance of the summary judgment, Def-co sought to distinguish the case to compel a reversal. Id.
“Defco seeks to distinguish Dyson Conveyor by pointing to the evidence cited in that opinion that the only other employer engaged in similar work in Alabama was in Mobile and did not have any job openings. See 529 So.2d at 214. Defco argues that in this case there is no similar evidence, i.e., no evidence that its employees could not engage in their trade if they could not work either for it or for Decatur Cylinder.
“Defco’s argument overlooks the paragraph following the one it cites. That paragraph distinguishes cases allowing partial restraints of trade, as follows:
“ ‘This statement [that partial restraints of trade may be allowed] has always come in the context where the one who is restrained from engaging in some aspect of a trade or business has entered into a contract, for a consideration, with the party seeking to enforce the contract. We do not see how the principle that allows “partial restraints” can apply to restrain employees from competing with their former employers without the employees’ having entered into such an agreement.’
“Dyson Conveyor, 529 So.2d at 214-15. The opinion continues by saying that an agreement such as that between Dyson Conveyor and Young & Vann could have a field of operation to the extent that the employers had noncompetition agreements with their employees that were enforceable under § 8-l-l(b). Id., at 215.”
Defco, 595 So.2d at 1331. The Defco court concluded that the section of the parties’ agreement restricting the transfer of employees between the two companies “purported to at least partially restrain Defco’s employees from engaging in their trade.” Id. Because Defco’s employees were not shown to be subject to noncompetition agreements, the court affirmed the summary judgment in favor of Decatur Cylinder. Id.
HES also seeks to distinguish both Dyson Conveyor and Defco. Specifically, HES argues that, despite what it terms as “superficial similarity” between the facts of those cases and the facts of the present case, the moonlighting policy in its handbook was, in effect, a permissible partial restraint of trade entered into between it and Brown that makes the holdings of both Dyson Conveyor and Defco inapplicable to the present case. HES’s' argument is based upon language in Dyson Conveyor *410 explaining that provisions like the one in Dyson Conveyor (and, by extension, the provisions in both Defco and the present case) do have “a field of operation” — to “supplement employer/employee contracts that are valid under ... § 8-1-1.” Dyson Conveyor, 529 So.2d at 215. The court illustrated the field of operation of an agreement like the “no switching” agreement in Dyson Conveyor by explaining that “once an employee enters with his employer into a partial restraint of his trade that would be allowed under § 8-1-1
..., a no switching agreement would add no further restraint on that employee, and so would not violate § 8-1-1, at least with respect to [that employee].” Id. Thus, HES argues, its moonlighting policy is a valid partial restraint of trade, i.e., a non-competition agreement of some sort, that, under § 8-1-1, properly restrained Brown from seeking employment with Crown. Based on that premise, HES urges us to conclude that the no-solicitation/no-hire provision imposes no further restraint on Brown and is therefore valid.
Crown argues that the moonlighting provision in HES’s handbook is not a noncompetition agreement under § 8-1-1. A review of the handbook and the testimony at trial supports Crown’s argument. The handbook explicitly states on its first page that “[t]his handbook is not intended to be a contract between the employee and employer.” Howell admitted at trial that the handbook was not a contract between HES and its employees and that the only penalty for an employee’s moonlighting was termination of his or her employment. As explained in Dyson Conveyor and repeated in Defco, partial restraints of trade (i.e. noncompetition agreements) are permitted in those circumstances where “the one who is restrained from engaging is some aspect of a trade or business has entered into a contract, for a consideration, with the party seeking to enforce the contract.” Dyson Conveyor, 529 So.2d at 214 (emphasis added); see also Defco, 595 So.2d at 1331. The lack of a concomitant contract restraining Brown between Brown and HES renders the no-solieitation/no-hire provision in the contract between HES and Crown void under § 8-1-1.
HES argues that the no-solicitation/no-hire provision, even if void under § 8-1-1 as construed in Dyson Conveyor and Defco, may still be enforced against Crown because, it says, HES was not in pari delicto with Crown and because Crown should be equitably estopped from asserting the voidness of the no-solicitation/no-hire provision. The general principle underlying the doctrine of in pari de-licto is that if two equally guilty parties enter into an illegal or void contract neither party may obtain relief in the courts. Robinson v. Boohaker, Schillaci & Co., P.C., 767 So.2d 1092, 1094 (Ala.2000)(citing Thompson v. Wiik, Reimer & Sweet, 391 So.2d 1016 (Ala.1980)). “The purpose of the doctrine of equitable estoppel is to promote equity and justice in an individual case by preventing a party from asserting rights under a general rule of law when his own conduct renders the assertion of such rights contrary to equity and good conscience.” Pierce v. Hand, Arendall, Bedsole, Greaves & Johnston, 678 So.2d 765, 768 (Ala.1996).
The no-solicitation/no-hire provision in the A & E Agreement between Crown and HES is only void with respect to Brown because HES does not have a noncompetition agreement with her. If HES had had a noncompetition agreement with Brown, the provision would have been enforceable to the extent that it did not impose a greater restraint than that non-competition agreement. Likewise, if this case involved another employee of either *411 HES or Crown who was subject to a non-competition agreement, the provision would be enforceable to the extent it imposed no further restraint on that employee. Therefore, we cannot see why Crown should be equitably estopped from asserting the voidness of the no-solicitation/no-hire provision with regard to Brown. The evidence at trial did not establish that Crown knew Brown was not restricted by a noncompetition agreement, and, thus, we cannot conclude that Crown’s “conduct renders the assertion” of the voidness argument “contrary to equity and good conscience.” Pierce, 678 So.2d at 768.
HES also argues that Crown lacks standing to assert the voidness argument under § 8-1-1 based on language contained in Southeast Cancer Network, P.C. v. DCH Healthcare Authority, Inc., 869 So.2d 452, 457 n. 9 (Ala.2003). In Southeast Cancer Network, our supreme court considered whether an exclusive agreement between DCH Healthcare Authority, Inc. (“DCH”), and Oncology Associates of West Alabama, P.C. (“Oncology Associates”), that Oncology Associates provide inpatient and outpatient oncology services at DCH-owned facilities violated § 8-1-1. Southeast Cancer Network, 869 So.2d at 454. Oncology Associates and Southeast Cancer Network, P.C. (“Southeast”), were medical professional corporations made up of physicians who practice oncology. Id. Because of an exclusive agreement between Oncology Associates and DCH, Southeast’s physician-members were unable to receive staff privileges to practice oncology at DCH-operated medical facilities. Id. at 455. Southeast sued DCH and Oncology Associates, seeking, among other things, a declaration that the exclusive agreement regarding the provision of oncology services was void under § 8-1-1. Id. DCH and Oncology Associates argued, among other things, that Southeast lacked standing to pursue the claim because it was a corporation and not a physician seeking staff privileges at a DCH-owned medical facility. Id. at 456. In a footnote, the supreme court indicated that under an analogous federal decision, Todorov v. DCH Healthcare Authority, 921 F.2d 1438, 1441 n. 1 (11th Cir.1991), Southeast, as a corporate person, would not have standing to bring a suit under § 8-1-1 because a corporate person does not have the capacity to be granted staff privileges at a hospital. Id. at 457 n. 9. The supreme court clearly stated that it was declining to decide the question of standing, stating that “[w]hile this case would appear to give the Court an opportunity to discuss standing under § 8-l-l(a), ... we do not believe that we need to make a definitive statement about who would have standing to bring a claim under § 8-l-l(a) ... in order to decide this case.” Id.
Because our supreme court did not decide the issue of standing, Southeast Cancer Network, P.C. is not authority for holding that Crown would lack standing under § 8-1-1. In addition, because the reason that Southeast may not have had standing was because it, as a corporation, would not have had the ability to be awarded staff privileges, the dicta contained in footnote 9 would not compel the conclusion, asserted by HES, that any corporation lacks standing to pursue a claim under § 8-1-1. More importantly, our supreme court permitted the corporations in both Dyson Conveyor and Defco to argue against the application of the provisions in their respective contracts because of their voidness under § 8-1-1. Thus, we do not accept HES’s argument that Crown lacks standing to assert § 8-1-1 as a defense.
In conclusion, the no-solicitation/no-hire provision in the A & E Agreement is void under § 8-1-1 because HES did not have a concomitant noncompetition agreement *412 with Brown. Thus, the trial court erred when it failed to enter a judgment as a matter of law in Crown’s favor on HES’s breach-of-contract claim. Accordingly, the judgment in favor of HES is reversed, and the cause is remanded for the entry of a judgment in favor of Crown.

The Appeal of the Garnishment Judgment in Case No.

203114.7

Crown also appeals the trial court’s determination that it owed Brown $24,600 for work she performed for Crown and that the funds were subject to garnishment by HES. Crown argues in its appellate brief that Brown was estopped from arguing that Crown owed her $19,600 of the $24,600; that Brown’s misrepresentation about her then-current employment on the vendor questionnaire permits Crown to withhold payment of the funds to Brown; that Brown’s breach of the A & E Agreement between her and Crown in certain respects permits Crown to withhold payment of the funds; that Brown’s structural analysis on one particular job was incorrect and required an expenditure exceeding the funds owed to her and that, under the A & E Agreement between Brown and Crown, Crown was permitted to setoff the cost of remedying the faulty analysis against the funds owed to Brown; and that the trial court’s judgment allowing the garnishment permitted a double recovery by HES. Crown’s brief contains not one citation of legal authority to support any of the above-mentioned arguments. See Rule 28(10), Ala. R.App. P. (requiring that legal arguments in an appellate brief be supported by citations to legal authority). We therefore decline to address any aspect of Crown’s appeal of the garnishment judgment. See Asam v. Devereaux, 686 So.2d 1222, 1224 (Ala.Civ.App.1996) (stating that “[t]his court will address only those issues properly presented and for which supporting authority has been cited”).
2040076 — REVERSED AND REMANDED WITH INSTRUCTIONS.
PITTMAN and BRYAN, JJ., concur.
THOMPSON and MURDOCK, JJ., dissent, without writing.
2031147 — AFFIRMED.
THOMPSON, PITTMAN, MURDOCK, and BRYAN, JJ., concur.

. Although Brown was the defendant in the garnishment action, her interests are more closely aligned to those of HES, and she is an appellee in case no. 2031147.