This is a contract case which involves a covenant not to compete and a cross claim alleging breach of warranty.
On July 1, 1974, Wade Herren entered into an agreement with the City of Birmingham whereby Herren was awarded the exclusive license to operate a tennis facility known as the Highland Racquet Club. The agreement was to terminate on June 30, 1979. It was amended May 28, 1976, but the termination date was not changed. In 1977, Dock Reed approached Herren about the possibility of Reed's taking over the tennis shop at Highland. Herren and Reed reached an agreement (hereafter Herren/Reed agreement) which was formalized on July 1, 1977. Under this agreement, Herren sold to Reed and his corporation, Highland Racquet Club, Incorporated (hereafter HRC), the exclusive right to occupy and operate the tennis shop at Highland and also certain assets located at the tennis *Page 140 
shop. The total sales price was $36,773.07, which included $25,000 for assets such as counters (show cases), mannequins, racquet repair and stringing equipment and other tennis shop supplies. Herren warranted that he had good and marketable title to the business and assets sold, but included a provision in the agreement that should the City claim any of the wooden show cases sold to Reed, then Herren would pay to Reed the depreciated value of such cases.
It was expressly provided in the agreement that neither Reed nor HRC would "obtain or attempt to obtain any agreement from the City covering any of the rights, privileges and licenses granted to Herren" by the City, "it being understood that as between the parties hereto, Herren shall have the first right to obtain such rights, licenses and privileges from the City." This provision was to remain in effect until June 30, 1987, or thereafter until the expiration of any license agreement Herren had with the City.
Herren was to receive three-fourths of the rental fees received from the rental of courts, lockers, etc., while Reed was to receive the remaining one-fourth.
In November 1978, Reed wrote to Herren and suggested that they become partners and split the fees earned at Highland. Herren responded by letter to Reed that he realized that things had not worked out "profit-wise" as perhaps Reed had expected, but he did not need or want a partner. Reed wrote Herren again on December 27, 1978, and stated that he had to have a better financial arrangement to continue the agreement. Reed again suggested splitting the fees with Herren, and offered to shoulder all of the responsibility for running the facility. If that was not agreeable then he felt Herren should repurchase the inventory, fixtures and goodwill.
Reed wrote a third letter to Herren on April 23, 1979. The letter stated that Herren's failure to perform his responsibilities under the contract made it impossible to continue with the agreement, and therefore he considered the agreement breached. Herren wrote back to Reed on May 25, 1979, saying their contract was still valid and not due to expire for several years. Herren also included two proposals to Reed that were essentially the same as the ones Reed had mentioned in his December 27, 1978, letter.
On June 4, 1979, Herren wrote Reed withdrawing the proposals. The next day he wrote Reed stating Reed had breached their agreement by dealing with the City and competing for the license to run Highland. On May 31, 1979, both Herren and Reed appeared at a public meeting held by the Birmingham Park and Recreation Board regarding the award of the Highland license. Both Reed and Herren submitted proposals to the Board. These were the only proposals submitted. The Board awarded the new license to Reed and HRC.
Herren initiated the present suit claiming breach of contract and sought damages and injunctive relief. Reed moved for a summary judgment, alleging that the agreement was void under Code 1975, § 8-1-1. The trial court denied the motion. HRC also asserted a counterclaim based on Herren's breach of warranty in the sale of certain tennis shop assets. The trial court, sitting without a jury, and after hearing evidence, entered a judgment finding Reed and HRC had breached the agreement by seeking and obtaining the license from the City; that Herren was not guilty of any prior breach of the agreement; that the noncompetition provisions did not violate § 8-1-1; that HRC's counterclaim was due to be denied; that injunctive relief was due to be denied; and that Herren was due damages in the amount of $24,514 due to loss of profits resulting from the breach of the agreement.
Before we get to the primary errors asserted we must dispose of a motion to dismiss the appeal as untimely filed.
The final judgment was entered by the trial court on November 16, 1980. Rule 59 (b) of the Alabama Rules of Civil Procedure required that a motion for a new trial be served not later than 30 days after the *Page 141 
entry of a judgment.[1] The thirtieth day or last day to file [2] a motion for a new trial fell on December 26, 1980, which was the day after Christmas. By order of the Governor, state offices and agencies were closed on December 26, 1980. The motion for a new trial was not filed until the following Monday. The trial court denied Herren's motion to strike the motion for a new trial as untimely. Herren asserts that if the trial court was wrong in its ruling and the motion for a new trial was in fact untimely, then Reed's notice of appeal was also untimely and the appeal is due to be dismissed.
The gist of Herren's motion is that December 26, 1980, even though the circuit clerk's office was closed, was not a holiday within the meaning of Rule 6 of the Alabama Rules of Civil Procedure, and, hence, should be included in computing the time within which a motion for a new trial could be filed and served.
Rule 6 provides that in computing any time period under the rules of civil procedure, the last day of the period shall be included in the period unless the last day is "a Saturday, a Sunday, or a legal holiday, in which event the period runs until the end of the next day which is not a Saturday, a Sunday, or a legal holiday." Listed as "legal holidays" by Rule 6 are New Year's Day, Washington's Birthday, Memorial Day, Independence Day, Labor Day, Veterans Day, Thanksgiving Day, Christmas Day, and "any other day appointed as a holiday by the President or the Congress of the United States, or as prescribed in § 1-3-8, Code of Alabama, as amended." Code 1975, § 1-3-8, also enumerates days to be observed as holidays and also provides for some holidays to be designated by the governor.
Herren asserts that because December 26, 1980, was not declared a holiday by the President or Congress of the United States, it was not a holiday for purposes of Rule 6. We disagree.
The Committee Comments to Rule 6 state that the net effect of the rule is to include any holidays, whether state or federal, within the definition of "legal holiday." The Comments specifically state that § 1-3-8 "provides for holidays by gubernatorial declaration." While the Committee Comments do not carry the force of the rules themselves, they do provide insight and in this instance encompass the spirit of the rule. To say that holidays declared by the Governor are not to be considered "legal holidays" within Rule 6 would be very unfair. The motion to dismiss the appeal is denied.
The first error asserted is that the trial court misapplied Code 1975, § 8-1-1. This section provides that:
 "(a) Every contract by which anyone is restrained from exercising a lawful profession, trade or business of any kind otherwise than is provided by this section is to that extent void.
 "(b) One who sells the good will of a business may agree with the buyer and one who is employed as an agent, servant or employee may agree with his employer to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a specified county, city or part thereof so long as the buyer, or any person deriving title to the good will from him, or employer carries on a like business therein.
 "(c) Upon or in anticipation of a dissolution of the partnership, partners may agree that none of them will carry on a similar business within the same county, city or town, or within a specified part thereof, where the partnership business has been transacted."
It is insisted by Reed that the restraint in question is not embraced by any exception to § 8-1-1. In essence, he argues that it is *Page 142 
a contract in general restraint of trade and is therefore void as contrary to the policy of the law. This issue was addressed many years ago in the case of Terre Haute Brewing Co. v.McGeever, 198 Ala. 474, 73 So. 889 (1916) to the effect that:
 ". . . Contracts in general restraint of trade violate the policy of the law, and are therefore void. Every contract, however, which at all restrains or restricts trade, is not void; it must injuriously affect the public weal; that it may affect a few or several individuals engaged in a like business does not render it void. Every contract of purchase and sale to some extent injures other parties; that is, it necessarily prevents others from making the sale or sales consummated by such contract. This is clearly true of every contract to purchase in the future, or to sell goods to be made in the future, or to purchase the entire output of a mine or all the grain or cotton produced by one or several parties during a season or seasons; but no one ever contended that such were void, unless affecting persons or territory sufficient to constitute it a monopoly, pool, or trust of the article in question.
 "Contracts in partial restraint of trade are always upheld, when properly restricted as to territory, time, and persons, where they are supported by sufficient consideration. — Moore Handley Co. v. Towers Co., 87 Ala. 206, 6 So. 41, 13 Am.St.Rep. 23, and note; Tuscaloosa Co. v. Williams, 127 Ala. 110, 28 So. 669, 50 L.R.A. 175, 85 Am.St.Rep. 125, and note; Linn v. Sigsbee, 67 Ill. 75; Hursen v. Gavin, 162 Ill. 377, 44 N.E. 735."
This Court has continued to adhere to the Terre Haute
rationale. Alabama-Tennessee Nat. Gas Co. v. City ofHuntsville, 275 Ala. 184, 153 So.2d 619 (1963); HibbettSporting Goods, Inc. v. Biernbaum, 391 So.2d 1027 (Ala. 1980).
We consider the sale of part of Herren's business, including good will, to Reed to be a contract within the perimeter of §8-1-1. Because we deem the restraint in question to be one in partial restraint of trade, our inquiry is whether it is reasonably limited as to time, territory, persons, and whether it is supported by sufficient consideration.
Having examined the entire agreement and particularly the non-competition provision, we conclude that the agreement is supported by sufficient consideration and is properly restricted as to territory, and persons. The other requirement, that it be properly restricted as to time, is not so easily decided.
In examining these restrictions, our only guideline is one of reasonableness. There are several factors that should be considered, which include "the motive of the parties, the extent and effect of the contract, the circumstances under which it is made, and its effect upon the public interest."Denton v. Alabama Cotton Co-op Association, 30 Ala. App. 429,7 So.2d 504 (1942). The effect upon the public is of primary importance. The Highland facility is owned by the City of Birmingham and open to the public. The City was to provide maintenance for the facility and was entitled to a percentage of the revenues. Contracts restraining business with governmental agencies should be viewed with a scrutinous eye.
Although not controlling, as it turned out only Reed and Herren applied for the new license. Had Reed complied with the restriction, Herren would have been the only applicant for the license. Not only was Reed prohibited from competing for the license in 1979, but was prohibited from applying for the license until 1987, or if there was a license in effect in 1987, then until that license expired. At the very least the restriction covered a period of 10 years. The reasonableness of such restrictions must necessarily depend upon the facts of each case. Our research reveals that the longest period of time which has been approved by the courts of this state is five years. Mason Corporation v. Kennedy, 286 Ala. 639,244 So.2d 585 (1977). Considering the circumstances of this case we are of the opinion that the ten-year-plus restriction on competition, particularly where a governmental agency is involved, is inordinate and *Page 143 
therefore unreasonable, thus rendering the non-competition provision of the contract void and unenforceable. It follows, therefore, that Herren is not entitled to damages for the breach of the void contractual provision.
The remaining issue has to do with HRC's counterclaim against Herren for breach of warranty in the sale of certain assets located in the tennis shop.
Herren warranted title to the counters to HRC with a provision that should the City claim the counters under its contract with Herren, then Herren would refund the depreciated value to HRC. While this arrangement is somewhat unorthodox, we cannot conclude from the record that the trial court has abused its discretion. Our view of this issue is strengthened by our holding on the non-competition agreement and the fact that Reed and HRC will have the use of the counters for some time to come.
The judgment is therefore affirmed in part and reversed in part.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
TORBERT, C.J., and FAULKNER, EMBRY and ADAMS, JJ., concur.
[1] After the appeal in this case was taken, Rule 59 (b) was amended to read: "A motion for a new trial shall be filed not later than 30 days after the entry of the judgment." (Emphasis added.)
[2] See City of Talladega v. McRae, 375 So.2d 429 (Ala. 1979).