529 So.2d 212 (1988)
DYSON CONVEYOR MAINTENANCE, INC.
v.
YOUNG & VANN SUPPLY COMPANY
James C. MARTIN
v.
YOUNG & VANN SUPPLY COMPANY.
Nos. 87-30, 87-31.
Supreme Court of Alabama.
June 10, 1988.
Lee H. Zell and Susan Salonimer Wagner of Berkowitz, Lefkovits, Isom, & Kushner, Birmingham, for Dyson Conveyor Maint., Inc.
Michael L. Edwards and Martha F. Petrey of Balch & Bingham, Birmingham, for James C. Martin.
Macbeth Wagnon, Jr., and Adam K. Peck, Bradley, Arant, Rose & White, Birmingham, for Young & Vann Supply Co.
ALMON, Justice.
These appeals challenge a judgment enjoining the defendant, Dyson Conveyor Maintenance, Inc. ("Dyson Conveyor"), from "continuing to breach the confidentiality agreement" between it and Young & Vann Supply Company ("Young & Vann"). At a preliminary stage of negotiations by which the two companies explored the possibility of one company's buying the other's assets, representatives of the two companies signed an agreement not to disclose confidential information and not to hire each other's employees for a specified period. The effect of the judgment is to prevent Dyson Conveyor from employing James C. Martin for the time specified in the agreement.
After Young & Vann filed this action against Dyson Conveyor, Martin filed a petition to intervene.[1] The trial court denied *213 Martin's petition and proceeded to judgment against Dyson Conveyor. In his appeal, Martin contends that the trial court erred in refusing to allow him to intervene. By separate appeal, Dyson Conveyor contends that the agreement is invalid and unenforceable insofar as it prohibits one company from hiring persons formerly employed by the other.
The basic facts are succinctly set forth in the trial court's opinion:
"[Young & Vann] is an industrial supply company with its headquarters in Birmingham, Alabama. [Young & Vann] has four divisions, one of them being the Power Transmission Division which engages, among other things, in the sales and servicing of conveyor belts to industrial users. The Power Transmission Division has annual sales and revenues of approximately $6,000,000.00 of which approximately $2,500,000.00 comes from the conveyor belt business.
"[Dyson Conveyor] has its headquarters in Birmingham, Alabama, and engages in conveyor belt sales and servicing. [Dyson Conveyor]'s business has historically been the service and repair of the conveyor belts but it is now getting more deeply into conveyor belt sales. In 1986, [Dyson Conveyor]'s gross sales and revenues were approximately $2,600,000.00.
"[Young & Vann] and [Dyson Conveyor] are competitors and have a substantial number of customers in common.
"In January 1987, Coy Dyson ("Dyson"), who is President of [Dyson Conveyor], called William O. Vann ("Wm. Vann"), who is the Chairman of the Board of [Young & Vann], and set up a lunch meeting. James C. Martin ("Martin"), the Division Manager of the Power Transmission Division of [Young & Vann], also attended the lunch meeting. After lunch, Dyson and Wm. Vann met privately and Dyson suggested that [Dyson Conveyor] and [Young & Vann] investigate the possibility of one of them buying the other's conveyor belt sales and service business. A meeting was scheduled to be held in the office of [Young & Vann]'s attorneys on February 12, 1987.
"The meeting on February 12, 1987, was attended by Gene Sellers ("Sellers"), who was attorney for the Defendant, [by] Robert D. Vann ("R. Vann"), who was then the Vice President-Finance (and who is currently the President) of [Young & Vann], and [by] Tom Carruthers ("Carruthers"), who was an attorney for [Young & Vann]. The meeting was held in Carruthers' office and before any information was exchanged Carruthers required that the parties enter into a confidentiality agreement ("[the] Agreement"). The Agreement was discussed by the attorneys, changes were made in Carruthers' initial draft, and it was then executed by Sellers on behalf of [Dyson Conveyor] and R. Vann on behalf of [Young & Vann]."
No sale took place, but Dyson Conveyor hired Martin. We shall set forth the remainder of the pertinent facts later in this opinion.
Most of the agreement relates to maintaining the confidentiality of information, and Dyson Conveyor does not challenge those provisions of the agreement. Dyson Conveyor does take exception to the following portion of the agreement:
"3. For the period beginning this day and ending March 1, 1990, neither of us will offer employment to any person at the time, or who was within six (6) months before, employed by the other. Neither of us will do anything to encourage any employee of the other to leave the employment of the other."
The parties refer to this as the "no switching" provision, and so shall we.
Among other arguments,[2] Dyson Conveyor contends that the no switching provision *214 violates Ala.Code 1975, § 8-1-1, which reads:
"(a) Every contract by which anyone is restrained from exercising a lawful profession, trade or business of any kind otherwise than is provided by this section is to that extent void.
"(b) One who sells the good will of a business may agree with the buyer and one who is employed as an agent, servant or employee may agree with his employer to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a specified county, city or part thereof so long as the buyer, or any person deriving title to the good will from him, or employer carries on a like business therein.
"(c) Upon or in anticipation of a dissolution of the partnership, partners may agree that none of them will carry on a similar business within the same county, city or town, or within a specified part thereof, where the partnership business has been transacted."
The trial court held that "the issue in this case does not fall within the proscriptions" of § 8-1-1, stating that the case does not involve "covenants not to compete or non-competition agreements with employees," but raises an issue of "whether or not two competitors may contract to protect their legitimate interests while divulging to each other the confidential information necessary to enable one to evaluate the business of the other for potential acquisition purposes."
We disagree with the trial court's conclusion that the agreement is not governed by § 8-1-1 simply because it is not a non-competition agreement between an employer and an employee. On the contrary, the fact that it does not fit within a listed exception to § 8-1-1 tends to indicate that, if it is in restraint of trade, it should be prohibited by that section.
The agreement, on its face, appears to violate § 8-1-1, because, by it, Young & Vann's and Dyson Conveyor's employees are "restrained from exercising a lawful profession, trade, or business." James Martin introduced an affidavit stating that the only other company in Alabama that conducts a similar business is in Mobile, and he testified that there was no opening at that company for a job similar to his position at Young & Vann. Thus, the agreement, if enforceable, effectively limits the two companies' employees to their present employment if they are to continue in their trade. This result conflicts with the policy embodied in § 8-1-1 of disfavoring contracts restraining employment. See Chavers v. Copy Products Co., 519 So.2d 942 (Ala.1988); Calhoun v. Brendle, Inc., 502 So.2d 689 (Ala.1986); Greenlee v. Tuscaloosa Office Products & Supply, Inc., 474 So.2d 669 (Ala.1985); DeVoe v. Cheatham, 413 So.2d 1141 (Ala.1982); Cullman Broadcasting Co. v. Bosley, 373 So.2d 830 (Ala.1979); Burkett v. Adams, 361 So.2d 1 (Ala.1978); Robinson v. Computer Servicenters, Inc., 346 So.2d 940 (Ala.1977); White Dairy Co. v. Davidson, 283 Ala. 63, 214 So.2d 416 (1968); Hill v. Rice, 259 Ala. 587, 67 So.2d 789 (1953).
We recognize that this Court has often said that contracts in partial restraint of trade may be allowed. Tomlinson v. Humana, Inc., 495 So.2d 630 (Ala.1986); Hoppe v. Preferred Risk Mutual Ins. Co., 470 So.2d 1161 (Ala.1985); Famex, Inc. v. Century Ins. Services, Inc., 425 So.2d 1053 (Ala.1982); Hibbett Sporting Goods, Inc. v. Biernbaum, 391 So.2d 1027 (Ala.1980); Terre Haute Brewing Co. v. McGeever, 198 Ala. 474, 73 So. 889 (1916). This statement has always come in the context where the one who is restrained from engaging in some aspect of a trade or business has entered into a contract, for a consideration, with the party seeking to enforce the contract. We do not see how the principle that allows "partial restraints" can apply to restrain employees from competing with their former employers without the employees' *215 having entered into such an agreement. This does not mean that there is no field of operation for agreements such as that involved here. They can be enforceable, however, only to the extent that they supplement employer/employee contracts that are valid under Ala.Code 1975, § 8-1-1. Thus, if Martin had validly agreed with Young & Vann not to compete with that company after he left its employ, and Young & Vann and Dyson Conveyor had appropriately entered into an agreement like the one at issue, then, when Dyson Conveyor hired Martin, Young & Vann could have sued not only Martin for breach of his contract, but also Dyson Conveyor for breach of its contract. In such a case, the no switching agreement would not restrain trade, because the employer/employee agreement, which is valid under § 8-1-1, would have already imposed the restraint. That is, once an employee enters with his employer into a partial restraint of his trade that would be allowed under § 8-1-1 and the cases cited above, a no switching agreement would add no further restraint on that employee, and so would not violate § 8-1-1, at least with respect to him.
The parties have cited no authority from Alabama, and we have found none, dealing specifically with this problem. There are some federal cases applying the antitrust laws and involving similar fact situations, but the parties in this case have not raised any issue regarding the antitrust laws. To the extent that the cases in the antitrust field are pertinent, we find them to be consistent with our holding that the agreement, absent a concomitant agreement directly with the employee, is an invalid restraint of trade.
In Cesnik v. Chrysler Corp., 490 F.Supp. 859 (M.D.Tenn.1980), the court upheld an agreement by which Chrysler agreed not to rehire its employees who were part of its Airtemp Division, which it sold to Fedders Corporation. The analogous situation here would be if Young & Vann agreed not to rehire Martin after transferring its conveyor belt business to Dyson Conveyor. Under our analysis above, such an agreement might be sustainable as part of an agreement executed pursuant to the exception to § 8-1-1 that one who sells a business to another can agree "to refrain from carrying on a similar business."
In Taterka v. Wisconsin Telephone Co., 394 F.Supp. 862 (E.D.Wis.1975), affirmed, 559 F.2d 1224 (7th Cir.) cert. denied, 434 U.S. 924, 98 S.Ct. 402, 54 L.Ed.2d 281 (1977), the court dismissed the cause of action based on an alleged no switching agreement because the complaint did not allege sufficient facts to show that the plaintiff was refused employment because of the alleged agreement.
Nichols v. Spencer International Press, Inc., 371 F.2d 332 (7th Cir.1967), reversed a summary judgment upholding a no switching agreement. That case involved an ongoing agreement among competitors, not a limited-term agreement among businesses conducting acquisition negotiations, so it is of limited relevance to the facts before us. For the same reason, Anderson v. Shipowners' Ass'n of Pacific Coast, 272 U.S. 359, 47 S.Ct. 125, 71 L.Ed. 298 (1926); Quinonez v. National Ass'n of Securities Dealers, Inc., 540 F.2d 824 (5th Cir.1976); and Union Circulation Co. v. Federal Trade Commission, 241 F.2d 652 (2d Cir. 1957), though allowing claims challenging no switching agreements, are not pertinent. Those and similar cases are included in an annotation to Nichols at 2 A.L.R.Fed. 839 (1969).
Three of the primary cases on which Young & Vann bases its argument involve noncompetition covenants between employees and their employers. Loral Corp. v. Moyes, 174 Cal.App.3d 268, 219 Cal.Rptr. 836 (1985); Lane Co. v. Taylor, 174 Ga. App. 356, 330 S.E.2d 112 (1985); Hospital Consultants, Inc. v. Potyka, 531 S.W.2d 657 (Tex.Civ.App.1975). Thus, to the extent those cases are pertinent, they support the proposition that actions for breach of a no switching agreement will not lie unless there are underlying employer/employee covenants not to compete.
Of those cases cited by the parties or disclosed by our research, the one *216 most similar to the present case is In re Flagstaff Foodservice Corp., 25 B.R. 844 (Bankr.S.D.N.Y.1982). In that case, the court explicitly refrained from relying on the alleged no switching agreement, but denied summary judgment on the ground that the complaint stated a tort claim. Alabama recognizes a cause of action for intentional interference with employment relations, but no such claim was filed here. See Hickman v. Winston County Hospital Bd., 508 So.2d 237 (Ala.1987); Lowder Realty, Inc. v. Odom, 495 So.2d 23 (Ala.1986); Gross v. Lowder Realty Better Homes & Gardens, 494 So.2d 590 (Ala.1986); James S. Kemper & Co. Southeast, Inc. v. Cox & Associates, Inc., 434 So.2d 1380 (Ala.1983); Purcell Co. v. Spriggs Enterprises, Inc., 431 So.2d 515, appeal after remand, 451 So.2d 801 (Ala.1984); Homa-Goff Interiors, Inc. v. Cowden, 350 So.2d 1035 (Ala. 1977). Kemper allowed a claim where Cox lured a Kemper employee away, knowing of the employee's covenant not to compete with Kemper.
In conclusion, the no switching agreement was void as a restraint of trade because there was no underlying employer/employee agreement that permissibly restricted Martin's right to work for a competing employer. For that reason, the trial court's judgment upholding the agreement is due to be, and it is hereby, reversed, and judgment is rendered for Dyson Conveyor. Martin's claim to intervene should have been allowed, but, under our decision, that claim is now moot and his appeal will be dismissed.
87-30 REVERSED AND JUDGMENT RENDERED.
87-31 DISMISSED AS MOOT.
JONES, SHORES, BEATTY and ADAMS, JJ., concur.
TORBERT, C.J., and MADDOX and HOUSTON, JJ., dissent.
TORBERT, Chief Justice (dissenting).
I disagree with the holding that the agreement in question violates Code 1975, § 8-1-1.[1]
First, I must point out that no case has been cited in which a person not a party to the contract at issue has been successful in asserting § 8-1-1 as a bar to the validity of the contract. See, Tomlinson v. Humana, Inc., 495 So.2d 630 (Ala.1986) (Torbert, C.J., concurring specially). Section 8-1-1 and the cases decided under it indicate that it applies only to a situation where there is a direct restraint imposed on a party to the contract preventing him from exercising a lawful profession, trade, or business.
Second, even if § 8-1-1 has a field of operation under these facts, I do not believe this contract per se violates § 8-1-1. In Hibbett Sporting Goods, Inc. v. Biernbaum, 391 So.2d 1027, 1029 (Ala.1980), quoting earlier cases, we said:
"`It is true that contracts in general restraint of trade violate the policy of the law and are therefore void, but as observed in Terre Haute Brewing Co. v. McGeever, 198 Ala. 474, 73 So. 889:
""`... Every contract, however, which at all restrains or restricts trade, is not void; it must injuriously affect the public weal; that it may affect a few or several individuals engaged in a like business does not render it void. Every contract of purchase and sale to some extent injures other parties; that is, it necessarily prevents others from making the sale or sales consummated by such contract....
"`"Contracts in partial restraint of trade are always upheld, when properly restricted as to territory, time and persons, where they are supported by sufficient consideration." ..."'
The majority argues that the partial restraint principle applies only when there is a direct restraint on a party to a non-competition or post-employment agreement because that is the only context in which application of the principle has historically *217 arisen. It should hardly come as a surprise that the partial restraint principle has arisen only in situations where a party to a contract is restrained from engaging in a trade or business, when, as previously noted, the cases indicate that the prohibition of § 8-1-1, to which the principle is an exception, comes into play only in that situation. Furthermore, the premise is not totally accurate because the partial restraint principle was applied in Tomlinson by a plurality of the court in deciding that a third party has no viable action under § 8-1-1 against the parties to an exclusive service contract for delivery of pathology services to a hospital. I see no compelling reason why the principle should apply when a direct restraint on a party to the contract is imposed and not apply when only an indirect restraint on a non-party exists.
No one was restrained from engaging in a trade or business by virtue of this agreement. Martin was employed in his trade at the time the agreement was entered into and apparently could have continued to be so employed. Neither of the parties to the agreement is restrained from engaging in a trade or business. The agreement does temporarily eliminate Martin's ability to be employed by Dyson Conveyor. The majority deems it significant that Martin would have no other viable employment opportunity in the state if the agreement were upheld. While the availability of alternative employment is not insignificant, I do not consider it to be controlling if the agreement is otherwise reasonable. Martin's employment opportunities would be similarly affected if the proposed acquisition had taken place. No one would seriously argue that § 8-1-1 would be a barrier to an acquisition.
I believe that if § 8-1-1 is applicable at all, this agreement is a valid partial restraint. I find no adverse effect on the public welfare in an agreement that protects the "legitimate interests [of two competitors] while divulging to each other the confidential information necessary to enable one to evaluate the business of the other for potential acquisition purposes."[2] In addition, the agreement is reasonable in scope in that it prohibits only one potential employer from hiring Martin for six months after he leaves the competitor and that limited restriction applies only if Martin leaves the competitor within three years.
MADDOX and HOUSTON, JJ., concur.
NOTES
[1] Young & Vann also challenged Dyson Conveyor's right to employ Robert J. Layne, another former Young & Vann employee, and the trial court denied Layne's petition to intervene. Young & Vann dismissed its claim regarding Layne, a belt technician with no supervisory or management duties, however, and these appeals present no issue with respect to Layne.
[2] Dyson Conveyor strongly contends that its attorney, Gene Sellers, did not have authority to enter into a no switching agreement; that absent written evidence of such authority, the agreement violates the Statute of Frauds; and their former employers without the employ that Sellers informed Coy Dyson of the confidentiality agreement but not of the no switching provision, so there can be no question of ratification. We make no judgment on these arguments.
[1] Appellants assert other reasons why the agreement is invalid, but the majority does not reach them; therefore, I will not address them.
[2] In order for a post-employment restriction to be valid, the employer must have a protectable interest. Calhoun v. Brendle, Inc., 502 So.2d 689 (Ala.1986). The trial court found that such an interest exists, and, for the purpose of this dissent, I assume that such an interest does exist.