[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 415 
Howell Engineering and Surveying, Inc. ("HES"), sued Crown Castle USA, Inc. ("Crown Castle"), and Gloria Brown, a former employee of HES who had also performed work for Crown Castle. The case was tried before a jury; it rendered a verdict in favor of HES and against Crown Castle and Brown and awarded damages. The trial court entered a judgment on the verdict. Crown Castle and Brown appealed, and this Court transferred the appeal to the Court of Civil Appeals pursuant to § 12-2-7(6), Ala. Code 1975. Brown's appeal was dismissed by agreement of the parties. The Court of Civil Appeals reversed the judgment against Crown Castle, holding that the contract at issue in this case violated § 8-1-1, Ala. Code 1975, and was therefore void. CrownCastle USA, Inc. v. Howell Engineering Surveying,Inc., 981 So.2d 400 (Ala.Civ.App. 2005). HES then petitioned this Court for a writ of certiorari, and we granted certiorari review.
 I. Facts and Procedural History
The Court of Civil Appeals stated the facts as follows in its opinion:
 "Crown Castle USA, Inc. ('Crown'), leases space on cellular-telephone towers to cellular-telecommunications providers. In conducting its business, Crown uses the services of several types of professionals, including land surveyors and civil or structural engineers. In the years before approximately mid to late 2002, Crown contracted with local vendors for the surveying and engineering services it required. Howell Engineering and Surveying, Inc. ('HES'), was one of Crown's approved vendors. Before November 2001, HES and Crown operated under a professional-services agreement ('the former agreement'). In November 2001, HES and Crown entered into a new agreement, entitled the `A E Agreement,' to govern their business relationship, which was explicitly defined in the A E Agreement as an independent-contractor relationship. The A E Agreement included provisions governing such things as the procedures for invoicing, the requirement that the contractor have certain insurance, the grounds for termination of the agreement, and confidentiality. The A *Page 416 E Agreement also specifically stated that the agreement was not exclusive and that Crown could award projects to other contractors. In addition, the A E Agreement contained the following provision in Paragraph 15E, which we will refer to as the `no-solicitation/no-hire provision':
 `"Contractor and Crown mutually agree not to solicit nor hire individuals actively employed by the other party's respective organization during and for a period of one (1) year following termination of this Agreement, without the prior written consent of the other party, which consent will not be unreasonably withheld.'
 "In October 2001, before the execution of the A 
E Agreement between Crown and HES, Gloria Brown, HES's only civil structural engineer, sought to become an approved vendor for Crown. Brown had decided to start her own business; however, she continued to work for HES. In February 2002, Brown began working on projects assigned to her by Crown. The employee handbook provided to Brown and other employees by HES contained the following provision:
 "`MOONLIGHTING
 "`Moonlighting is strongly discouraged and must be approved in advance by the President. No moonlighting will be permitted if it is a conflict of interest with our company. Failure to have other employment authorized in advance is grounds for immediate dismissal.'
 "Sometime around March 15, 2002, Larry Howell, the president of HES, learned that Brown was doing projects for Crown independently. Immediately after he discovered that Brown was working for Crown, Larry Howell terminated Brown's employment with HES. He testified that he had `laid [Brown] off and that he had explained to her that the business from Crown was slowing down and that he could not afford to continue employing her.
 "HES sued Crown, alleging that Crown had breached the A E Agreement and the former agreement between the parties and that Crown had intentionally interfered with HES's business relations. HES also sued Brown, alleging that Brown had intentionally interfered with HES's business relations and that Brown had converted certain items of property owned by HES. The intentional-interference-with-business-relations claims against both Brown and Crown were disposed of by the entry of summary judgments in favor of Brown and Crown. The remaining claims proceeded to a jury trial, at which the breach-of-contract claim based on the former agreement between Crown and HES was voluntarily withdrawn by HES. After Crown's and Brown's respective preverdict motions for a judgment as a matter of law ('JML') at the close of HES's evidence and at the close of all the evidence were denied by the trial court, the remaining breach-of-contract claim based on Crown's alleged breach of the A E Agreement and the conversion claim against Brown were submitted to the jury. The jury returned a verdict in favor of HES and against both Brown and Crown, awarding HES $618,634 in damages on its breach-of-contract claim against Crown and $7,300 in compensatory damages and $73,000 in punitive damages on its conversion claim against Brown. Crown and Brown each filed postjudgment motions; Crown's postjudgment motion was denied, but the trial court granted Brown's postjudgment motion in part, *Page 417 
remitting the punitive-damages award to $50,000. Both Crown and Brown appealed to the Alabama Supreme Court. Brown's appeal was later dismissed by agreement of the parties.
 "Later, HES filed a garnishment action against Crown and Brown to recover from Crown a portion of the $57,300 judgment against Brown. The trial court determined that Crown owed Brown $24,600, which amount was subject to garnishment by HES. Crown appealed that judgment to this court (case no. 2031147). Crown's appeal of the judgment entered on the jury's verdict was then transferred to this court, pursuant to Ala. Code 1975, § 12-2-7(6), assigned case no. 2040076, and the two appeals were consolidated."
Crown Castle, 981 So.2d at 403-04 (footnote omitted).
The Court of Civil Appeals reversed the trial court's judgment as to the breach-of-contract claim and remanded the case with instructions that the trial court enter a judgment in favor of Crown Castle.[1] Relying upon Dyson Conveyor Maintenance,Inc. v. Young Vann Supply Co., 529 So.2d 212
(Ala. 1988); and Defco, Inc. v. Decatur Cylinder, Inc.,595 So.2d 1329 (Ala. 1992), the Court of Civil Appeals held that the no-hire provision in the A E Agreement was void under § 8-1-1, Ala. Code 1975, [2] because HES did not have a concomitant noncompetition agreement with Brown.
 "The no-solicitation/no-hire provision in the A 
E Agreement between Crown and HES is only void with respect to Brown because HES does not have a noncompetition agreement with her. If HES had had a noncompetition agreement with Brown, the provision would have been enforceable to the extent that it did not impose a greater restraint than that noncompetition agreement."
981 So.2d at 410
In its petition for a writ of certiorari, HES first contended that the Court of Civil Appeals' holding that the no-hire provision was void because HES did not have a noncompetition agreement with Brown conflicts with this Court's holding inSoutheast Cancer Network, P.C. v. DCH HealthcareAuthority, 869 So.2d 452, 456 (Ala. 2003). We held inSoutheast Cancer that a partial restraint of trade does not fall within the conduct condemned by § 8-1-1. HES argues that the no-hire provision was only a partial restraint of trade in that it did not prevent Brown from rendering engineering services for employers other than Crown Castle. Thus, according to HES, there is no basis upon which to declare the no-hire provision void.
HES next contended that the Court of Civil Appeals' holding that Crown Castle had standing to challenge the no-hire provision *Page 418 
also conflicts with Southeast Cancer, in which this Court questioned whether one of the parties had standing to invoke § 8-1-1 but did not reach that issue, deciding the case on another ground. Although the proper ground for seeking certiorari review of the standing issue would have been Rule 39(a)(1)(C) — the material question is one of first impression — rather than conflict because the issue of standing was not decided in Southeast Cancer, we nevertheless granted the writ as to this issue because the question of standing goes to our subject-matter jurisdiction.
Finally, HES contended that the Court of Civil Appeals' refusal to hold that Crown Castle was equitably estopped from asserting the invalidity of the no-hire provision conflicts withPierce v. Hand, Arendall, Bedsole, Greaves Johnston, 678 So.2d 765 (Ala. 1996), in which this Court recognized that, on proper proof, a party could be equitably estopped from asserting § 8-1-1.
 II. Standard of Review A. Standing
This Court recently discussed the appropriate standard of review to be applied to the question of standing.
 "The standard of review applicable to a determination of standing was accurately set forth by Judge Crawley in Medical Association of the State of Alabama v. Shoemake, 656 So.2d 863, 865 (Ala.Civ.App. 1995) ('No presumption of correctness exists as to the trial court's application of the law to the facts. Jayroe v. Hall, 624 So.2d 522 (Ala. 1993). The issue of standing presents a pure question of law, and the trial court's ruling on that issue is entitled to no deference on appeal. Richards v. Cullen, 152 Wis.2d 710, 712, 449 N.W.2d 318, 319 (App. 1989).')."
Blue Cross Blue Shield of Alabama v. Hodurski,899 So.2d 949, 953 (Ala. 2004).
 B. Judgment as a Matter of Law
Our standard of review on a motion for a judgment as a matter of law ("JML") is well settled.
 "When reviewing a ruling on a motion for a JML, this Court uses the same standard the trial court used initially in deciding whether to grant or deny the motion for a JML. Palm Harbor Homes, Inc. v. Crawford, 689 So.2d 3 (Ala. 1997). Regarding questions of fact, the ultimate question is whether the nonmovant has presented sufficient evidence to allow the case to be submitted to the jury for a factual resolution. Carter v. Henderson, 598 So.2d 1350 (Ala. 1992). The nonmovant must have presented substantial evidence in order to withstand a motion for a JML. See § 12-21-12, Ala. Code 1975; West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). A reviewing court must determine whether the party who bears the burden of proof has produced substantial evidence creating a factual dispute requiring resolution by the jury. Carter, 598 So.2d at 1353. In reviewing a ruling on a motion for a JML, this Court views the evidence in the light most favorable to the nonmovant and entertains such reasonable inferences as the jury would have been free to draw. Id. Regarding a question of law, however, this Court indulges no presumption of correctness as to the trial court's ruling. Ricwil, Inc. v. S.L. Pappas Co., 599 So.2d 1126 (Ala. 1992)."
Waddell Reed, Inc. v. United Investors Life Ins.Co., 875 So.2d 1143, 1152 (Ala. 2003).
 III. Standing
Because the question of standing implicates subject-matter jurisdiction, we *Page 419 
address it first. Hodurski, 899 So.2d at 954. "`Standing represents a jurisdictional requirement which remains open to review at all stages of the litigation.'" State v.Property at 2018 Rainbow Drive, 740 So.2d 1025, 1028
(Ala. 1999) (quoting National Organization for Women, Inc.v. Scheidler, 510 U.S. 249, 255, 114 S.Ct. 798,127 L.Ed.2d 99 (1994)).
HES argues that only those parties who have a direct interest in the application of § 8-1-1 should have standing to invoke that section, and that a party other than an employee whose ability to work is affected should not be able to rely upon § 8-1-1 to attack an agreement it voluntarily entered into with another party, especially when the employee the statute was meant to protect is not injured. HES thus maintains that Crown Castle, who is not the intended beneficiary of the statute, does not have standing to use that statute to protect itself from its own contractual breach. HES relies upon Todorov v. DCHHealthcare Authority, 921 F.2d 1438 (11th Cir. 1991). Dr. Todorov, a neurologist, sued DCH Healthcare after DCH denied his application for staff privileges to perform a procedure in DCH's radiology department. The United States Court of Appeals for the Eleventh Circuit held that Dr. Todorov's corporation, in which he was the sole shareholder, did not have standing to bring an action, but that Dr. Todorov individually could bring an action regarding the denial of his privileges to practice radiology at the hospital. HES reasons that Crown Castle lacks standing in an even more fundamental way because, it says, Crown Castle did not employ Brown or "represent her" in any way.
In response, Crown Castle argues that this Court should reject HES's argument that Crown Castle lacked standing to challenge the no-hire provision. Crown Castle points out that inDyson and Defco the corporations alleged to have violated the no-hire agreements were permitted to argue the invalidity of those agreements. Crown Castle maintains that this Court has never held that a party to an invalid agreement, who has been sued for violation of that agreement, lacks standing to defend the case based on the invalidity of the agreement. Crown Castle argues that an employer sued for hiring an employee in violation of § 8-1-1 does have an interest in the application of the statute; therefore, Crown Castle continues, it is difficult to envision a more direct interest in the validity of an agreement than that of a party who is sued for its breach.
Section 8-1-1 expresses the public policy of this State as to contracts restraining employment. Clark Substations, L.L.Cv. Ware, 838 So.2d 360, 363 (Ala. 2002). When a party to a contract that restrains employment is sued on that contract, the party sued has standing to challenge the validity of the contract under § 8-1-1, thereby asserting a violation of Alabama public policy in a setting in which it has a specific and peculiar stake in the validity of the contract. In this case, Crown Castle and HES were the parties who executed the contract containing the no-hire provision, and HES sued Crown Castle alleging a breach of that contract, resulting in a significant damages award by the jury against Crown Castle. "Standing requires injury in fact." Kid's Care, Inc. v.Alabama Dep't of Human Res., 843 So.2d 164, 166 (Ala. 2002). Crown Castle has sustained injury in defending a lawsuit and in its potential liability for a damages award in excess of $600,000. Consequently, Crown Castle had standing to challenge the validity of the no-hire provision under § 8-1-1.
 IV. Partial Restraints of Trade
The dispositive question presented by this case is whether the no-hire provision, *Page 420 
which imposed a partial restraint on Brown of the practice of her trade, is void under § 8-1-1. In Tomlinson v.Humana, Inc., 495 So.2d 630, 631-32 (Ala. 1986), this Court stated the established rule of law on this issue:
 "[T]his Court has long held that not every contract which imposes a restraint on trade or competition is void. Contracts which impose only a partial restraint on competition are permitted when the public welfare is not injured and the contract is properly restricted as to persons and territory affected. In Terre Haute Brewing Co. v. McGeever, 198 Ala. 474, 73 So. 889 (1916), this Court held that a contract, whereby a retailer agreed to buy all the beer he needed from the other party, was not void as a restraint on commerce or competition, because it amounted only to a partial restraint on trade and did not affect the public interest. Denton v. Alabama Cotton Co-op. Ass'n, 30 Ala.App. 429, 7 So.2d 504 (1942), involved `an agreement by cotton warehousemen to recognize only the classification of cotton made by a cotton classer of their own selection to the exclusion of all other licensed classers.'
 "In Denton, the Court of Appeals held that `it is not unlawful for any number of persons, without an unlawful object in view, to associate and agree that they will not work for, employ or deal with certain individuals or classes of individuals.' 30 Ala.App. at 432, 7 So.2d at 507."
In Tomlinson, Humana and a pathology practice group entered into a contract giving the practice group exclusive privileges. A pathologist with the practice group, once he was no longer employed with the group, sought staff privileges at Humana for the purpose of practicing pathology, and Humana refused to extend privileges, citing its exclusive agreement with the pathology practice group. This Court declined to find a violation of § 8-1-1, noting that "[t]he contract in question has no effect on Tomlinson's ability to practice pathology at any of the other area hospitals, nor [does Humana] completely prohibit him from practicing at the Humana hospitals." 495 So.2d at 632.
Notwithstanding the foregoing established law, inDyson, supra, and Defco, supra, this Court invalidated even partial restraints of trade by upholding such restraints only where, and implicitly because of, an agreement between the employer and employee imposed a restraint that was permitted by an exception in § 8-1-1. Those cases suggest that, but for the exception, the statute would invalidate every restraint, even partial restraints. When those cases were decided, Alabama had a line of cases striking down partial restraints of trade and a line of cases upholding them.
The Dyson Court attempted to harmonize those lines of cases as follows:
 "We recognize that this Court has often said that contracts in partial restraint of trade may be allowed. Tomlinson v. Humana, Inc., 495 So.2d 630 (Ala. 1986); Hoppe v. Preferred Risk Mutual Ins. Co., 470 So.2d 1161 (Ala. 1985); Famex, Inc. v. Century Ins. Services, Inc., 425 So.2d 1053 (Ala. 1982); Hibbett Sporting Goods, Inc. v. Biernbaum, 391 So.2d 1027 (Ala. 1980); Terre Haute Brewing Co. v. McGeever, 198 Ala. 474, 73 So. 889 (1916). This statement has always come in the context where the one who is restrained from engaging in some aspect of a trade or business has entered into a contract, for a consideration, with the party seeking to enforce the contract. We do not see how the principle that allows `partial restraints' can apply to restrain employees from competing with their former *Page 421 
employers without the employees' having entered into such an agreement."
529 So.2d at 214-15 (emphasis added). Defco relied upon Dyson in invalidating the partial restraint of trade in that case because the employer had not entered into a noncompetition agreement with its employee.[3] Finally, inSevier Insurance Agency, Inc. v. Willis Corroon Corp. ofBirmingham, 711 So.2d 995, 999 (Ala. 1998), this Court said:
 "By this opinion, we hold that a `partial restraint of trade' is subject to § 8-1-1, but will be upheld when it is properly restricted as to territory, time, and persons and where it is supported by sufficient consideration."
Then, in Southeast Cancer, this Court reviewed an agreement between DCH Healthcare and Oncology Associates, a practice group of oncology physicians, which provided that the practice group had the exclusive right to staff privileges for oncology services at DCH. The trial court upheld the restriction in an action brought by Southeast Cancer, a rival practice group. This Court summarized Southeast Cancer's contention that the contract conferring exclusive rights on Oncology Associates at DCH was invalid as follows:
 ". . . Southeast argues that the trial court erred in its application of the law and that the contract between DCH and Oncology Associates should be declared void under § 8-1-1, Ala. Code 1975, because that contract prohibits Southeast's oncologists from practicing oncology at DCH facilities."
869 So.2d at 456. Noting that nothing in the contract prevented physicians in Southeast Cancer from being employedelsewhere as oncologists, this Court concluded, without citing Sevier, Defco, or Dyson, that the agreement did not restrict the physicians employed by Southeast Cancer from practicing oncology and therefore did not violate § 8-1-1. The Court stated:
 "`[T]his Court has long held that not every contract which imposes a restraint on trade or competition is void.' Tomlinson v. Humana, Inc., 495 So.2d 630, 631-32 (Ala. 1986). The fact that a contract ` "may affect a few or several individuals engaged in a like business does not render it void [under § 8-1-1, Ala. Code 1975]."' Reed v. Herren, 423 So.2d 139, 142 (Ala. 1982) (quoting Terre Haute Brewing Co. v. McGeever, 198 Ala. 474, 480, 73 So. 889, 891 (1916)). Every contract' "to some extent injures other parties; that is, it necessarily prevents others from making the sale or sales consummated by such contract."' Reed, 423 So.2d at 142 (quoting Terre Haute Brewing Co. v. McGeever, 198 Ala. 474, 480, 73 So. 889, 891
(1916))."
869 So.2d at 457-58.
In this case, the Court of Civil Appeals upheld the line of cases holding even partial restraints of trade illegal and thus reversed the judgment of the trial court, relying on our pre-Southeast Cancer cases in which we held that partial restraints of trade were illegal under § 8-1-1. The Court of Civil Appeals stated:
 "`We recognize that this Court has often said that contracts in partial restraint of trade may be allowed. This statement has always come in the context where the one who is restrained from engaging in some aspect of trade or business has entered into a contract, *Page 422 
for a consideration, with the party seeking to enforce the contract. We do not see how the principle that allows "partial restraints" can apply to restrain employees from competing with their former employers without the employees' having entered into such an agreement'"
Crown Castle, 981 So.2d at 408 (quotingDyson, 529 So.2d at 214-15) (citations omitted). Thus, the Court of Civil Appeals concluded that before any other agreement that effects a partial restraint of trade can be valid, there must be a restrictive contract between the employer and the employee. In so holding, the Court of Civil Appeals did not discuss Southeast Cancer.
HES argues that the Court of Civil Appeals erred in holding that the no-hire provision in the agreement between HES and Crown Castle was invalid because it imposed a partial restraint of trade in violation of § 8-1-1 unless Brown had a noncompetition agreement with HES, and that its holding conflicts with Southeast Cancer. In SoutheastCancer, HES maintains, this Court determined that § 8-1-1 did not operate to void the no-hire agreement between DCH Healthcare and Oncology Associates, even though there was no noncompetition agreement between the physicians employed by Southeast Cancer and any other party in the case and even though Southeast Cancer's physicians were restrained from providing oncology services for the hospital. HES states that Brown is an engineer licensed in 12 states and that she could have worked for many other engineering firms in the Birmingham area, in Alabama, or in the other states in which she is licensed. Because the no-hire provision in the agreement between HES and Crown Castle was a de minimis restraint upon Brown's ability to work as an engineer, HES argues, like the restrictive covenant in Southeast Cancer, the no-hire provision in the agreement between HES and Crown Castle prevented each company only from hiring the employees of the other and did not restrain engineers who worked for HES from working as engineers anywhere else but Crown Castle.
Crown Castle argues that this issue is controlled not bySoutheast Cancer, but by Dyson andDefco, with which, it says, the Court of Civil Appeals' opinion is entirely consistent. Crown Castle states that in bothDyson and Defco this Court held that "no-switching" agreements, by which employers agree not to hire each other's employees, are unenforceable under § 8-1-1 if they limit the employees' employment opportunities without their consent, and that the effect of these cases is to void no-hire clauses between companies absent binding noncompetition agreements between the companies and the affected employees.Southeast Cancer, Crown Castle argues, does not address, much less control, the issue presented by this case. Crown Castle maintains that Southeast Cancer did not involve an employer-employee noncompetition agreement or a no-hire agreement between competing employers. Instead, it says, the agreement at issue in Southeast Cancer was an exclusive provider contract between a hospital and a group of oncologists. Such a contract, Crown Castle argues, is different from the no-hire provision at issue in this case.
After reviewing the conflicting lines of cases, we conclude that the line of cases represented by Tomlinson andSoutheast Cancer, holding that a partial[4] restraint of *Page 423 
trade is not void under § 8-1-1 even when there is no corollary noncompetition agreement with an employee, is the better reasoned. In this case, the no-hire provision in the agreement between HES and Crown Castle did not prevent Brown from practicing her trade or profession. Because the only employer for whom she was prohibited from working was Crown Castle, she clearly continued to have an opportunity for meaningful employment. No argument has been made that the type of engineering Brown practices is so specialized or narrow that she cannot find employment because of the no-hire provision. Indeed, such an argument cannot be made, because Brown testified at trial that she was then employed in Birmingham by another engineering firm. Therefore, we reverse the judgment of the Court of Civil Appeals.
Because we hold that the line of cases culminating inSoutheast Cancer is the better reasoned, to the extent that Dyson, Defco, and Sevier conflict with this opinion, they are hereby overruled. We acknowledge that HES did not ground its petition for a writ of certiorari on Rule 39(a)(1)(E), Ala. R.App. P., by seeking to have overruled the controlling precedent relied upon by the Court of Civil Appeals. Nevertheless, because Dyson, Defco, and Sevier
have been sub silentio overruled by SoutheastCancer, we need not require a specific request to overrule the conflicting line of precedent.
 V. Conclusion
Because the Court of Civil Appeals relied upon Dyson
and Defco, which we today overrule, we reverse the judgment of the Court of Civil Appeals, and we remand this case for that court to address the issues it pretermitted when it held that the no-hire provision was void. Moreover, because we reverse the Court of Civil Appeals' judgment, we need not address HES's argument that Crown Castle should be equitably estopped from arguing that the no-hire provision was void.
REVERSED AND REMANDED.*
NABERS, C.J., and SEE, HARWOOD, WOODALL, STUART, SMITH, and BOLIN, JJ., concur.
[1] The Court of Civil Appeals affirmed the trial court's judgment with respect to the garnishment proceeding referred to in the statement of facts (case no. 2031147). The garnishment proceeding is not before this Court on certiorari review.
[2] Section 8-1-1 provides, in pertinent part:
 "(a) Every contract by which anyone is restrained from exercising a lawful profession, trade, or business of any kind otherwise than is provided by this section is to that extent void.
 "(b) . . . [O]ne who is employed as an agent, servant or employee may agree with his employer to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a specified county, city, or part thereof so long as the buyer, or any person deriving title to the good will from him, or employer carries on a like business therein."
(Emphasis added.)
[3] We note that in reviewing Tomlinson, one of the cases relied upon in Dyson to support the narrow exception to the general rule holding partial restraints invalid, we can find no indication that Tomlinson had a restrictive covenant with his employer. Indeed, he was no longer employed when he filed his action.
[4] Because the exceptions to § 8-1-1 can be loosely described as countenancing "partial" restraints of trade,i.e., properly limited as to time and territory, one might question the logic of dealing with any such exceptions if the general rule in § 8-1-1 does not apply to partial restraints. This problem in semantics can be resolved by recognizing that the sense of the phrase "partial restraints," in the context of stating that the general rule expressed in § 8-1-1 does not apply to partial restraints of trade, is limited to partial versus complete in the context of the ability of an employee to engage, as a practical matter, in the meaningful pursuit of one's calling, notwithstanding the terms of the agreement. If the agreement under attack does not so limit the options of the employee, then it is only a partial restraint of trade not subject to the general rule of § 8-1-1.
* Note from the reporter of decisions: On August 13, 2007, the Court of Civil Appeals dismissed the appeal, without opinion.