[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-10084
Non-Argument Calendar
_____

D.C. Docket No. 1:13-cv-00614-KD-M

ERIC S. DAWSON, JR.,

Plaintiff - Counter Defendant – Appellee,

versus

AMERITOX, LTD.,

Defendant – Counter Claimant – Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama
_____

(July 10, 2014)

Before HULL, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

In its appeal, Ameritox argues that the district court erred in concluding that its non-compete agreement with Appellee Eric Dawson was governed by Section 8-1-1 of the Alabama Code, which prohibits certain restraints on trade. Further, Ameritox argues that even if Section 8-1-1 is applicable, the district court erred in concluding that the employment exception does not apply. Ameritox seeks reversal of the district court's decision and remand with instructions to enjoin Dawson from performing services for its competitor, Millennium. Dawson maintains that the district court's legal analysis was correct and furthermore, that this court cannot instruct the district court to enter a preliminary injunction since Ameritox failed to prove several required elements. Upon review of the record and consideration of the parties' briefs and applicable law, we affirm the district court.

## I.

Dawson was hired by Ameritox in 2011 as an Associate Director of Medical Affairs. The district court found that his employment began on April 11, 2011. On April 7, 2011, Dawson signed a Confidentiality and Non-Competition Agreement (Agreement), which restrained him from working for a number of competitors in Ameritox's drug market, including Millennium, for one year after his employment ends. According to Ameritox, during Dawson's employment, he became privy to highly confidential, proprietary and sensitive information related to Ameritox's technology, research and strategic business plan.

2

On December 3, 2013, Dawson gave notice of his resignation, and Ameritox claims he informed his manager that he was accepting a position with Millennium. Ameritox alleges that it reminded Dawson of his obligations under the Agreement but that, despite several attempts, Dawson did not substantively respond. Dawson alleges that Ameritox immediately threatened legal action. Ameritox claims that upon receipt of Dawson's resignation and work computer, their forensic analysis revealed that in the weeks prior to his resignation, Dawson secretly transferred confidential documents to his email and a Dropbox folder.

On December 11, 2013, Dawson filed a declaratory judgment in Alabama court, challenging the restrictive covenants in the Agreement. Ameritox removed the case to the U.S. District Court for the Southern District of Alabama, filing counterclaims alleging that Dawson breached the Agreement. Ameritox also filed a motion for a temporary restraining order (TRO) and preliminary injunction.

Following a hearing, the district court issued a TRO. At the subsequent hearing, Dawson argued that the Agreement was void under Alabama Code Section 8-1-1 because Dawson was not yet an "employee" of Ameritox when he signed the Agreement. On January 6, 2014, the district court granted in part and denied in part Ameritox's Motion for Preliminary Injunction. Specifically, the district court denied the portion of the injunction preventing Dawson from working for Millennium, concluding that the Agreement was void under Alabama law

3

because it was governed by § 8-1-1 prohibiting restraints on trade and did not fall within the employee-employer exception.

On appeal, Ameritox argues that the district court erred as a matter of law, and filed a motion pursuant to Federal Rule of Civil Procedure 62(c) to restore the injunction to preclude Dawson from working for Millennium. On January 9, 2014, the district court heard oral argument and refused to change its decision.

## II.

A party seeking a preliminary injunction bears the burden of establishing its entitlement to relief. *Citizens for Police Accountability Political Comm. v. Browning*, 572 F.3d 1213, 2117 (11th Cir. 2009) (per curiam).

> "In considering the propriety of preliminary relief, we consider four factors: (1) whether there is a substantial likelihood that the party applying for preliminary relief will succeed later on the merits; (2) whether the applicant will suffer an irreparable injury absent preliminary relief; (3) whether the harm that the applicant will likely suffer outweighs any harm that its opponent will suffer as a result of an injunction; and (4) whether preliminary relief would disserve the public interest."

*Scott v. Roberts*, 612 F.3d 1279, 1290 (11th Cir. 2010).

We review the district court's decision to deny a preliminary injunction for abuse of discretion. *Scott*, 612 F.3d at 1289. "In doing so, we review the findings of fact of the district court for clear error and legal conclusions de novo." *Id.*

## III.

**A. The district court's decision**

4

In determining whether Ameritox was entitled to a preliminary injunction, the district court analyzed its likelihood of succeeding on the merits.  The district court found that the Agreement was void because Dawson signed it prior to the start of his official employment with Ameritox.  *See* § 8-1-1;[1] *Pitney Bowes, Inc. v. Berney Office Solutions*, 823 So. 2d 659, 662 (Ala. 2001) ("The employee-employer exception to the voidness of noncompete agreements (§ 8-1-1(b)) does not save a noncompete agreement unless the employee-employer relationship exists *at the time the agreement is executed*.").  After reviewing the case law, the district court concluded that prospective employment is insufficient to make the Agreement valid, and it is not sufficient that a person had been offered employment to create an employee-employer relationship.  *See id.* ("Absent the employee-employer relationship when the agreement is executed, the agreement is void.").  The district court specifically rejected Ameritox's arguments that § 8-1-1 applies only to mergers, and that § 8-1-1 does not apply to contracts which only partially restrain trade.  The district court found that it need not determine whether the Agreement was a partial restraint on trade because § 8-1-1 applies to an

---

[1] § 8-1-1. Contracts restraining business void; exceptions.
(a) Every contract by which anyone is restrained from exercising a lawful profession, trade, or business of any kind otherwise than is provided by this section is to that extent void.
(b) [O]ne who *is employed* as an agent, servant or employee may agree with his employer to refrain from carrying on or engaging in a similar business and from soliciting old customers of such employer within a specified county, city, or part thereof so long as the . . . employer carries on a like business therein.
. . . . (emphasis added).

employee's non-compete agreement whether it is a total or partial restraint on trade.

Given the district court's finding that Ameritox lacked a substantial likelihood of success on the merits, it terminated the TRO to the extent that it prohibited Dawson from performing any services for Ameritox's competitors, including Millennium.  Finally, the district court concluded that since Ameritox failed to meet its burden for the first prerequisite for a preliminary injunction, it need not address the remaining three.

### B. Ameritox failed to establish that the district court abused its discretion

On appeal, Ameritox argues that the district court erred in concluding that the Agreement was governed by Section 8-1-1 and that it did not fall properly within the employee-employer exception to the statutory prohibition on restraints on trade.[2]  Ameritox's primary argument is that 8-1-1 only applies to total restraints on trade, and the Agreement is only a partial restraint on trade.  Ameritox maintains that the district court erroneously relied upon Alabama Supreme Court case law that was expressly overruled by *Ex Parte Howell Eng'g and Surveying, Inc.*, 981 So. 2d 413 (Ala. 2006), and recognized by this court in *Akzo Nobel*

---

[2] The parties do not dispute that if the agreement is void against Alabama's public policy, (i.e., as expressed by § 8-1-1), then Maryland law would not apply despite the choice of law provision stating that Maryland law governs. *See, e.g.*, *Ex parte Exxon Corp.*, 725 So. 2d 930, 933 (Ala. 1998) (holding that the parties' choice of law provision will be given effect unless it is contrary to "Alabama policy").

*Coatings, Inc. v. Color. & Equip., LLC*, 451 F. App'x 823 (11th Cir. 2011) (per curiam).  Ameritox argues that the in *Ex Parte Howell*, the Alabama Supreme court resolved a number of conflicting decisions addressing the applicability of Section 8-1-1 to partial or total restraints on trade under varying circumstances, and concluded that partial restraints are not governed by § 8-1-1.  981 So. 2d at 422–23.  Ameritox maintains that there is no reading of *Howell* which could justify the district court's conclusion that a noncompete agreement that only contains a partial restraint on trade is governed by § 8-1-1.  In *Akzo*, this court explained that under Alabama law, "a restraint is partial, and not total, if the restrained party can engage as a practical matter, in a meaningful pursuit of one's calling, notwithstanding the terms of the agreement."  *Akzo*, 451 F. App'x at 824 (internal quotation marks omitted).

Here, Ameritox insists that the Agreement is clearly only a partial restraint on trade because it does not preclude Dawson from pursuing his trade or profession.  Finally, Ameritox argues that even if the district court properly found that § 8-1-1 applies to the Agreement, or that it is a total restraint on trade, it erred by concluding that the Agreement is void because it did not fall under the

exception in § 8-1-1(b) which permits such restraints in the context of an employer-employee relationship.[3]

In response, Dawson argues that the district court properly determined that the Agreement was a "pre-employment non-compete agreement" and is void under Alabama law.  The Agreement was signed prior to Dawson's employment, and textual analysis of the statute shows that the state legislature did not intend to include such agreements.  Whereas § 8-1-1(c) allows certain non-competition agreements "in anticipation" of partnership dissolution, § 8-1-1(b) uses "is employed" in the present tense.  Further, Dawson explains that Alabama and federal courts have routinely interpreted § 8-1-1 as applying to both partial and total restraints of trade in noncompete agreements, and disputes Ameritox's characterization of the case law as indicating that § 8-1-1 apply only to complete restraints on trade.  The district court emphasized that in *Ex Parte Howell*, the issue was a "no-hire" commercial covenant between employers.  981 So. 2d at 415–18.  The Supreme Court of Alabama explicitly held that "a partial restraint of trade is not void under § 8-1-1 even where there is no corollary noncompetition agreement with an employee."  *Id.* at 422–23 (footnote omitted).  Accordingly, the district court properly concluded that it is "nonsensical to say that § 8-1-1 does not

---

[3] Because we agree with the district court that the Agreement was void under § 8-1-1 and that Ameritox was therefore unlikely to succeed on the merits, we need not evaluate Ameritox's additional arguments.

apply to employee non-compete agreements that only partially restrain trade."

Finally, in its discussion of *Azko*, an unpublished decision, the court determined

that the non-compete agreement at issue was not "a substantial limitation upon [the

defendant's] opportunity to continue the same business he previously pursued." *Id.*

at 825. In distinguishing that case, the district court explained that the defendant

was permitted to continue his same business. Ultimately, the district court

determined that it need not decide whether the Agreement was a partial restraint on

trade because § 8-1-1 applies only to employees and Dawson was not yet an

employee of Ameritox when he signed the Agreement.

　　Upon review, we agree with the district court that Ameritox has failed to

show a substantial likelihood of success on the merits because Dawson signed the

Agreement prior to his employment with Ameritox and thus it was void under § 8-

1-1. In *Pitney Bowes*, the employer trying to enforce the noncompete agreement

did not employ the individual at issue until three weeks after he signed the

agreement. 823 So. 2d at 662. The Alabama Supreme Court explicitly held that

"[t]he employee-employer exception to the voidness of noncompete agreements

does not save a non compete agreement unless the employee-employer relationship

exists "*at the time the agreement is executed.*" *Id.* at 662. Ameritox's attempts to

distinguish this case are unpersuasive. Ameritox argues that the relationship

contemplated by the noncompete in *Pitney Bowes* was more speculative than that

9

here, where Dawson had verbally accepted employment with Ameritox when he signed the Agreement. However, as Dawson explains, employees routinely accept employment well before they would be considered "employed" by an employer. Moreover, the Alabama Supreme Court specifically explained that the state legislature would not need to adopt a statute to void noncompete agreements that were not supported by consideration at all, because such contracts would be unenforceable for lack of consideration even without the statute. *Id.* Thus, because we find no clear error in the district court's factual finding that Dawson's employment with Ameritox began on April 11, 2011, a few days after he signed the Agreement, we do not disagree with the district court's conclusion that the Agreement is void under § 8-1-1.

Further, we agree with the district court that, because the Agreement prevents Dawson from working in any capacity with Millennium in the United States or Canada, it is unlikely to be considered a partial restraint on trade. Contrary to Ameritox's argument, § 8-1-1 does appear to apply to employee noncompete agreements that only partially restrain trade. Nevertheless, despite extensive disagreement between the parties, we need not determine whether the Agreement constitutes a partial or a complete restraint on trade in order to settle this appeal. We agree with the district court that Ameritox lacks a substantial likelihood of success on the merits of its breach of contract claim.

In obtaining the injunctive relief that it seeks, Ameritox has the affirmative burden of proving each of the required elements. *Browning*, 572 F.3d at 1217. Here, because the district court found Ameritox failed to meet its burden on the first prerequisite, it did not need to address the other elements. Despite Ameritox's request, we will not reverse the district court's decision and independently evaluate prerequisites which were never addressed by the trial court.

We conclude that the district court's decision to deny Ameritox a preliminary injunction was not an abuse of discretion. *See Scott*, 612 F.3d at 1289. Accordingly, we **AFFIRM.**